**COMMONWEALTH of Kentucky,**
**Appellant,**

**v.**

**Jesse James ENGLISH, Appellee.**

**No. 98–SC–333–DG.**

Supreme Court of Kentucky.

June 17, 1999.

A.B. Chandler, III, Attorney General, Frankfort, KY, Michael Harned, Assistant Attorney General, Office of Attorney General, Criminal Appellate Division, Frankfort, for appellant.

Franklin P. Jewell, Jewell & Lemke, Louisville, for appellee.

COOPER, Justice.

Appellee, Jesse James English, was convicted in the McCracken Circuit Court of two counts of sexual abuse in the first degree, KRS 510.110(1)(b)2, and was sentenced to five years imprisonment on each count. The sentences were ordered to run consecutively for a total of ten years. The Court of Appeals reversed the convictions and remanded for a new trial on the ground that evidence of prior acts of sexual misconduct on the part of Appellee was improperly admitted at trial. We granted discretionary review.

Appellee was convicted of sexually abusing his wife's two grand-nieces, M.G., age six, and A.G., age four. The children lived with their mother in the same neighborhood as Appellee and spent a substantial amount of time visiting in Appellee's home. M.G. testified that on one such occasion, both she and A.G. were sitting on Appellee's lap when he reached under A.G.'s clothing and placed his right hand between her legs and on her "private parts," then placed his left hand inside M.G.'s underwear and between her legs. M.G. testified that Appellee engaged in similar activity with her on "several" occasions and that sometimes it would occur while she and Appellee were covered by a blanket. On each occasion, Appellee's wife was in the home, but in another room and apparently unaware of Appellee's sexual contact with the two children.

Appellee did not testify. However, a police detective summarized the contents of a recorded interview with Appellee which took place shortly after his arrest. During that interview, Appellee was asked whether he had ever put his hand down M.G.'s or A.G.'s pants. In response, he made the following statements: "I might have [M.G.], but I've not the other little baby girl. . . . While we were watching TV, I might have and not realized it. . . . Well, maybe I did and didn't know it, not realizing it. . . . If I did, I don't remember it. . . . If I did it, I didn't do it on purpose. . . . If I did it, I didn't mean anything by it."

■ Two adult nieces of Appellee's wife, D.B and T.N., testified that Appellee similarly abused them when they were children. D.B. testified that when she was six or seven years old, Appellee touched her vaginal area on four different occasions while she was visiting in his home. The

abuse occurred on a couch while Appellee's wife was in the kitchen. T.N. testified that when she was eight or nine years old, Appellee touched her vaginal area on two different occasions while she was visiting in his home. On each occasion, the abuse occurred on a couch while T.N. was either asleep or pretending to be asleep. Appellee's wife was present in the home on both occasions. Neither D.B. nor T.N. testified to their present ages or to the dates on which they were abused by Appellee. However, D.B. testified that she is presently married and has a six month old son; and T.N. testified that she, too, is married and has children aged sixteen, thirteen, twelve and eleven. The Court of Appeals concluded that these instances of prior conduct were inferentially too remote in time to the charged offenses to establish a "common scheme or plan" and, therefore, the evidence should have been suppressed.

KRE 404(b)(1) provides as follows:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible:

(1) If offered for some other purpose, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident;

. . . .

This Rule is virtually identical to Rule 404(b) of the Federal Rules of Evidence. Even prior to the adoption of the Kentucky Rules of Evidence, effective July 1, 1992, our courts had always recognized the general prohibition against proving character or criminal predisposition by evidence of prior wrongful acts. *See, e .g., Jones v. Commonwealth*, 303 Ky. 666, 198 S.W.2d 969 (1947). However, we also recognized that evidence of prior conduct is admissible, if it is "probative of an element of the crime charged ... even though it may tend to prove the commission of other crimes." *Sanders v. Commonwealth*, Ky., 801 S.W.2d 665, 674 (1990), *cert. denied*,

502 U.S. 831, 112 S.Ct. 107, 116 L.Ed.2d 76 (1991). Specifically, we held that evidence of other crimes, wrongs or acts was admissible if it tended to show "motive, identity, absence of mistake or accident, intent, or knowledge, or *common scheme or plan.*" *Pendleton v. Commonwealth*, Ky., 685 S.W.2d 549, 552 (1985) (emphasis added). "Common scheme" is not included in the "other purpose" exceptions listed in KRE 404(b)(1), though "plan" is specifically included. We do not interpret this omission or variance in terminology as intending an alteration of this long-standing legal concept, for "the specifically listed purposes are illustrative rather than exhaustive." *Tamme v. Commonwealth*, Ky., 973 S.W.2d 13, 29 (1998), *cert. denied*, —— U.S. ——, 119 S.Ct. 1056, 143 L.Ed.2d 61 (1999) (quoting R. Lawson, *The Kentucky Evidence Law Handbook*, § 2.25, at 87 (3d ed. Michie 1993)).

The "common scheme or plan" exception to the general rule of exclusion first appeared in our jurisprudence in a dissenting opinion in *Raymond v. Commonwealth*, 123 Ky. 368, 96 S.W. 515 (1906). "The rule is that where several felonies are connected together as part of one common scheme and all tend to a common end, they may be given in evidence." *Id.*, 96 S.W. at 518 (Hobson, C.J., dissenting) (citing *People v. Stout*, 4 Parker, Cr.R. 71 (N .Y.), 1 Wigmore on Evidence § 304, and 1 Jones on Evidence § 144). In *Douglas v. Commonwealth*, 307 Ky. 391, 211 S.W.2d 156 (1948), our predecessor court, quoting from 20 Am. Jur. *Evidence* § 310, referred to a common scheme or plan as one "embracing the commission of two or more crimes so related to each other that proof of one tends to establish the others." *Id.*, 211 S.W.2d at 157. Thus, "common scheme or plan" was intended to refer to the fact that the charged offense was but one of two or more related criminal acts.

The label "common scheme" was used under pre-existing law to explain the admissibility of evidence revealing the

commission of uncharged crimes which were part and parcel of a greater endeavor which included the charged offense. For example, in a case involving a charge of armed robbery evidence is introduced to show that the getaway car had been stolen by the defendant shortly before the robbery; it is possible to see the auto theft (the uncharged other crime) and the armed robbery (the charged offense) as part of a common scheme.

Commentary to KRE 404(b)(1), Evidence Rules Study Committee, Final Draft (1989). It is not coincidental that RCr 6.18 permits joinder of offenses in an indictment if *inter alia* they "are based on the same acts or transactions connected together or constituting parts of a common scheme or plan," and that a significant factor in determining whether joinder is proper is the extent to which evidence of one offense would be admissible in a trial of the other offense. *Rearick v. Commonwealth*, Ky., 858 S.W.2d 185, 187 (1993).

Obviously, temporal proximity is more significant with respect to evidence offered to prove a common scheme or plan than to evidence offered to prove, *e.g.*, motive, intent, knowledge, identity, or absence of mistake or accident. In upholding the admission of evidence of a prior wrongful act which occurred seventeen years before the charged offense, the Supreme Court of North Carolina held in *State v. Hipps*, 348 N.C. 377, 501 S.E.2d 625 (1998), *cert. denied*, —— U.S. ——, 119 S.Ct. 1119, 143 L.Ed.2d 114 (1999), that remoteness is less significant when the issue is modus operandi than when the issue is whether both crimes arose out of a common scheme or plan. *Id.* at 642. That same court has further held that even with respect to evidence of a common scheme or plan, remoteness is a factor to be considered not in determining relevancy under Rule 404, but in determining probativeness for the purpose of conducting the balancing test required by Rule 403. *State v. Frazier*, 344 N.C. 611, 476 S.E.2d 297, 299 (1996);

*State v. Howell*, 343 N.C. 229, 470 S.E.2d 38 (1996).

■ Neither Rule 404 nor Rule 401 mentions temporal proximity as a condition of admissibility. *Hicks v. State*, 690 N.E.2d 215, 220 (Ind.1997). Temporal remoteness generally is held to go to the weight of the evidence, but not to render it inadmissible *per se*. *Grey v. State*, 273 Ind. 439, 404 N.E.2d 1348, 1353 (1980); *State v. Breazeale*, 238 Kan. 714, 714 P.2d 1356, 1362–63 (1986), *cert. denied*, 479 U.S. 846, 107 S.Ct. 164, 93 L.Ed.2d 102 (1986); *State v. Lutcher*, 700 So.2d 961, 970 (La.Ct. App.1997). Thus, if the prior wrongful act, or a particular aspect thereof, is so similar to the charged offense as to show a modus operandi which tends to prove an element of the charged offense, remoteness alone does not require suppression of the evidence of the prior misconduct. *Adrian v. People*, 770 P.2d 1243, 1246 (Colo.1989).

In *Huddleston v. United States*, 485 U.S. 681, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988), the United States Supreme Court described the interplay between the rules of relevancy, particularly with respect to Rule 404(b), as follows:

Rules 401 and 402 establish the broad principle that relevant evidence—evidence that makes the existence of any fact at issue more or less probable—is admissible unless the Rules provide otherwise. Rule 403 allows the trial judge to exclude relevant evidence if, among other things, "its probative value is substantially outweighed by the danger of unfair prejudice." Rules 404 through 412 address specific types of evidence that have generated problems. Generally, these latter Rules do not flatly prohibit the introduction of such evidence but instead limit the purpose for which it may be introduced. Rule 404(b), for example, protects against the introduction of extrinsic act evidence when that evidence is offered solely to prove character. The text contains no intimation, however, that any preliminary showing is necessary before such evidence may

be introduced for a proper purpose. If offered for such a proper purpose, the evidence is subject only to general strictures limiting admissibility such as Rules 402 and 403.

*Id.,* 485 U.S. at 687–88, 108 S.Ct. at 1500.

Obviously, the evidence of Appellee's prior sexual misconduct was not offered to prove the existence of a common scheme or plan, *i.e* ., that the charged offenses were part and parcel of a greater endeavor which included the prior acts of sexual misconduct. Instead, the evidence was offered to show a modus operandi for the purpose of proving motive, intent, knowledge, and the absence of mistake or accident, *i.e.,* contrary to his statements to the police, Appellee knew what he was doing (knowledge), he did it on purpose (intent, absence of mistake or accident), and he did it for his own sexual gratification (motive). In order to prove the elements of a subsequent offense by evidence of modus operandi, the facts surrounding the prior misconduct must be so strikingly similar to the charged offense as to create a reasonable probability that (1) the acts were committed by the same person, and/or (2) the acts were accompanied by the same *mens rea.* If not, then the evidence of prior misconduct proves only a criminal disposition and is inadmissible. *Billings v. Commonwealth,* Ky., 843 S.W.2d 890, 891 (1992); *Adcock v. Commonwealth,* Ky., 702 S.W.2d 440 (1986).

The facts related by D.B. and T.N. were sufficiently similar to the facts related by M.G. to establish a modus operandi. In each instance, the victim was a prepubescent female relative of Appellee's wife. In fact, the familial relationship with each victim was the same, except for the generational gap. Each incident occurred while the victim was a visitor in Appellee's home and either on a couch or in a chair, presumably in a living room area as opposed to, *e.g.,* a bedroom. Each incident occurred while Appellee's wife was also present in the home. Finally, each incident consisted of Appellee touching the victim's vaginal area.

The test of relevancy having been satisfied by proof of a modus operandi, the evidence of Appellee's prior sexual misconduct was properly admitted unless its probative value was substantially outweighed by the danger of undue prejudice. KRE 403. This is the point at which the issue of temporal remoteness becomes a factor in determining admissibility. *Robey v. Commonwealth,* Ky., 943 S.W.2d 616, 618 (1997). However, it is not the sole determining factor. While temporal remoteness tends to lessen the probative value of the evidence of Appellee's prior sexual misconduct, its probativeness is conversely heightened by the multiplicity of victims, the multiplicity of occurrences, and the fact that the abuse was perpetrated against members of several generations of the same family. *Lear v. Commonwealth,* Ky., 884 S.W.2d 657 (1994). The balancing of the probative value of such evidence against the danger of undue prejudice is a task properly reserved for the sound discretion of the trial judge. *Rake v. Commonwealth,* Ky., 450 S.W.2d 527, 528 (1970); Lawson, *supra,* § 2.10 III, at 59–60. The standard of review is whether there has been an abuse of that discretion. *Partin v. Commonwealth,* Ky., 918 S.W.2d 219, 222 (1996). The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles. 5 Am.Jur.2d *Appellate Review* § 695 (1995); *cf. Kuprion v. Fitzgerald,* Ky., 888 S.W.2d 679, 684 (1994). Applying this test, we conclude that the trial judge did not abuse his discretion in admitting the evidence of Appellee's prior acts of sexual misconduct.

Accordingly, the decision of the Court of Appeals is reversed and the judgments of conviction and sentences imposed by the McCracken Circuit Court are reinstated.

GRAVES, JOHNSTONE, KELLER and WINTERSHEIMER, JJ., concur.

LAMBERT, C.J., concurs in result only without separate opinion.

STUMBO, J., dissents without separate opinion.