James MAXIE, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

No. 2001–SC–0636–MR.

Supreme Court of Kentucky.

Aug. 22, 2002.

Emily Holt, Department of Public Advocacy, Frankfort, for Appellant.

A.B. Chandler III, Attorney General, George G. Seelig, Assistant Attorney General, Criminal Appellate Division, Office of the Attorney General, Frankfort, for Appellee.

GRAVES, Justice.

On May 14, 2001, Appellant, James Maxie, was convicted in the McCracken Circuit Court of first-degree trafficking in a controlled substance, possession of drug para-

phernalia, and of being a second-degree persistent felony offender. Appellant was sentenced to a total of twenty years imprisonment and appeals to this Court as a matter of right. For the reasons set forth herein, we affirm.

## I. FACTS

Appellant was arrested after the police completed an undercover buy of crack cocaine at his home on March 16, 2000. Sergeant Jon Hayden and Detective Scott Brown of the McCracken County Sheriff's Department wired an informant, Charles Crockett, so that Detective Brown could listen to the deal as it occurred. After being searched by the police, Crockett was given $40 in marked bills to make the buy. Crockett then went to Appellant's house, where Appellant's mother answered the door and told Crockett that Appellant would be right back. When Appellant arrived, he sold Crockett $40 worth of crack cocaine. Detective Brown taped the transaction from around the corner and watched as Crockett left the house. Crockett then met Detective Brown at City Hall and gave him the purchased amount of cocaine. Based on that evidence, police obtained a search warrant for Appellant's house where they discovered 14.2 grams of crack cocaine, 19 plastic baggies with the corners cut off, a crack pipe, $300 cash, and a digital pager.

Appellant was subsequently indicted, and a jury trial followed. Appellant's sole defense was that it was not his voice on the audio tape and that he did not sell the drugs to Crockett. Consequently, Appellant did not present any witnesses or evidence, rather he merely played the audio tape for the jury.

The jury convicted Appellant on all charges. Appellant makes various assignments of error based on the trial procedures. Further facts are developed as necessary.

## II. REMOVAL OF VENIRE PERSON FOR CAUSE

■ Voir dire revealed that Ms. Dudley, a potential juror, knew Sergeant Hayden because their children were friends. Appellant moved to strike Ms. Dudley for cause. The trial judge inquired of Ms. Dudley whether she would be able to be fair and impartial. After receiving Ms. Dudley's assurances that she could fairly weigh the evidence, the judge denied the motion to remove her for cause. Appellant thereafter removed Ms. Dudley with a peremptory challenge.

Appellant argues that Ms. Dudley was not qualified to serve as a juror under RCr 9.36(1) and should have been removed by the trial court. Appellant claims that this amounted to a denial of a peremptory challenge, the result of which is that Appellant was denied his right to due process and a fair and impartial jury. We disagree.

■ RCr 9.36(1) states in part: "When there is reasonable ground to believe that a prospective juror cannot render a fair and impartial verdict on the evidence, that juror shall be excused as not qualified." However, prospective jurors are not automatically disqualified merely because they may have heard something about the case or may be acquainted with the parties. Prospective jurors are still qualified to sit on a case provided reasonable grounds exist to believe they can render a fair and impartial verdict based solely on the evidence adduced. *Sanders v. Commonwealth,* Ky., 801 S.W.2d 665 (1991), *cert. denied,* 502 U.S. 831, 112 S.Ct. 107, 116 L.Ed.2d 76 (1991); *Jones v. Commonwealth,* Ky.App., 737 S.W.2d 466 (1987). The pertinent inquiry, therefore, is whether it was reasonable for the trial court to find that Ms. Dudley was qualified to sit.

Despite her acquaintance with Sergeant Hayden, Ms. Dudley assured the trial court that she could weigh all of the testimony and find Appellant not guilty if the evidence was not sufficient to convict. These assurances provided the trial judge with a reasonable basis for declining to remove Ms. Dudley for cause.

■ Additionally, the trial court has discretion in deciding whether to excuse a prospective juror for cause, and appellate courts will not disturb that decision absent an abuse of discretion. *Caldwell v. Commonwealth,* Ky., 634 S.W.2d 405 (1982); *Scruggs v. Commonwealth,* Ky., 566 S.W.2d 405 (1978), *cert. denied,* 439 U.S. 928, 99 S.Ct. 314, 58 L.Ed.2d 321 (1978). Since there were reasonable grounds for the trial court's declining to excuse Ms. Dudley, no error occurred.

### III. DENIAL OF MOTION FOR MISTRIAL

■ During voir dire, the trial court asked the venire panel if it could accept the presumption of innocence. Mr. Rock, a prospective juror, said, "I cannot be impartial when it comes to somebody that has had those charges brought against them. In my opinion if the Commonwealth of Kentucky and the investigating officers didn't have proof we wouldn't be here today." Appellant immediately moved for a mistrial which was denied. The trial court instead dismissed Mr. Rock from service and gave the following admonition to the jury panel:

"[Mr. Rock] made statements ... I can tell you this, I've been in this business since 1976. I don't know Mr. Rock. He apparently treats people who are under the influence of some drugs and alcohol. I have never seen him in any trial, never seen him involved in any criminal case, so I don't want you to think he is an insider that knows how this works, be-cause I don't believe that he is. You should put out of your mind anything that he said pertaining to whether someone is guilty or innocent of these charges. If you can't put that out of your mind, we need to know that now, but I can tell you that you should give absolutely no weight to what Mr. Rock stated about his experience. Anyone have any problem with that?"

■ Appellant argues that this admonition was not sufficient to ensure his right to a fair trial, because the entire venire panel was irrevocably tainted by Mr. Rock's statements. However, a trial court's decision to deny a motion for mistrial will not be disturbed absent an abuse of discretion. *Gould v. Charlton Co., Inc.,* Ky., 929 S.W.2d 734 (1996).

■ Although Mr. Rock's comments were stated in the presence of the venire panel, the detailed curative admonition given by the trial court provided a legally sufficient remedy. The record must reveal a manifest necessity for a mistrial before such an extraordinary remedy will be granted. *Skaggs v. Commonwealth,* Ky., 694 S.W.2d 672, 678 (1985). This Court in *Gould, supra,* held that for a mistrial to be proper, the harmful event must be of such magnitude that a litigant would be denied a fair and impartial trial and the prejudicial effect could be removed in no other way. 929 S.W.2d at 738. The curative admonition in this case obviated the necessity of a mistrial and sufficiently negated whatever prejudice Mr. Rock's comments had inserted. There is a presumption that the jury follows such an admonition. *Alexander v. Commonwealth,* Ky., 862 S.W.2d 856, 859 (1993), *overruled on other grounds* in *Stringer v. Commonwealth,* Ky., 956 S.W.2d 883 (1997), *cert. denied,* 523 U.S. 1052, 118 S.Ct. 1374, 140 L.Ed.2d 522 (1998). Since Appellant has shown no actual prejudice, we must assume that the

**864**

jury followed the trial court's admonition to disregard Mr. Rock's comments.

## IV. EVIDENCE OF AGE TO ESTABLISH PFO STATUS

■ Appellant next contends that the Commonwealth did not present evidence that he was over 18 years of age when he committed his prior offense, thus failing to prove beyond a reasonable doubt a crucial element of the offense of second-degree persistent felony offender. KRS 532.080(2); *see Davis v. Commonwealth*, Ky., 899 S.W.2d 487, 490 (1995). Appellant now requests that his case be remanded for a new penalty phase. However, this issue is unpreserved and does not warrant reversal under RCr 10.26.

As an initial matter, we recognize that remanding for a new penalty phase would accomplish nothing. The Commonwealth would simply prove Appellant's age in the correct manner. Therefore, any error by the Commonwealth was harmless. RCr 9.24. Appellant was, in fact, 18-years-old when he committed the prior offense. The prosecutor failed to prove this fact only because of an error by the testifying parole officer. Instead of testifying to Appellant's age at the time the prior offense was committed, the officer testified to Appellant's age at the time of final sentencing. Neither side recognized this error at trial because Appellant was actually 18-years-old at both points in time. The mistake is therefore immaterial, and since Appellant was not harmed, a new penalty phase is not required.

■ Further, the jury had sufficient evidence to make a reasonable inference that Appellant was 18-years-old when he committed the first felony. The Commonwealth presented testimonial evidence of Appellant's birth date, as well as the indictment which showed the date on which the prior offense was committed. This would only require the jury to perform some simple subtraction to calculate Appellant's age at the time he committed the offense. Such reasonable inferences are no longer prohibited in Kentucky when a jury must decide whether a defendant is a persistent felony offender. *Martin v. Commonwealth*, Ky., 13 S.W.3d 232, 233 (2000). Therefore Appellant's claim is without merit.

## V. ADMISSION OF PRIOR INDICTMENT DURING PFO PHASE

■ During the PFO phase, the Commonwealth introduced several documents concerning Appellant's prior felony conviction. Commonwealth's Exhibit 10 included the 1997 indictment for first-degree wanton endangerment, the final judgment and sentence of probation for that offense, and a 1998 order revoking probation for various offenses committed during a traffic stop. Appellant objected only to the introduction of the indictment. The trial court ruled the indictment was admissible, citing truth-in-sentencing reasons. The jury was permitted to take all of the documents into the jury room during deliberations.

Appellant argues that the introduction of the indictment was prejudicial because it revealed that his prior offense involved violent conduct. Specifically, the 1997 indictment stated that Appellant "committed the offense of first-degree wanton endangerment by shooting a firearm into [the victim's] residence...." Appellant contends that the details of the prior conviction were not necessary to the PFO charge and served no other purpose than to show he was a violent person.

Prior to the enactment of KRS 532.055, the Truth-In-Sentencing Statute, the law generally was that the only evidence admissible during the PFO phase of a trial

was that necessary to prove the defendant's status as a persistent felony offender. "[T]he sole issue to be determined in a persistent felony offender phase of a trial is that of status; that is, does the accused meet the statutory definition of being a persistent felony offender." *White v. Commonwealth*, Ky.App., 611 S.W.2d 529 (1980). In *Pace v. Commonwealth*, Ky., 636 S.W.2d 887 (1982), *overruled on other grounds* in *Commonwealth v. Harrell*, Ky., 3 S.W.3d 349 (1999), the Commonwealth erroneously sought to introduce the circumstances of the underlying previous felony conviction during the PFO phase. In reversing, this Court held that in order to prove a defendant's PFO status, "the Commonwealth merely need[ed] to establish a simple check list of technical statutory requirements." Similarly, Appellant relies upon the language in *Bray v. Commonwealth*, Ky., 703 S.W.2d 478, 480 (1985), wherein we stated:

On retrial, we expect the indictments for the former conviction will not be read to the jury. It is the judgment of conviction which establishes the prior conviction, not the indictment. The indictment which is sought to be used in establishing PFO status shall not be used, except for so much of it as may be necessary to establish the date of the commission of the crime referred to in the judgment of conviction on that particular indictment.

 However, following the 1986 enactment of KRS 532.055, which created bifurcated trials in felony cases, the jury is permitted to hear evidence in the sentencing phase of trial that would not have been admissible during the guilt phase. *Commonwealth v. Reneer*, Ky., 734 S.W.2d 794 (1987). KRS 532.055(2)(a)(2) provides that evidence may be offered by the Commonwealth relevant to sentencing including "[t]he nature of prior convictions of the

defendant, both felony and misdemeanor." Further, KRS 532.055(3) states that "All hearings held pursuant to this section shall be combined with any hearing provided for by KRS 532.080 [Persistent Felony Offender Sentencing]."

In his dissent in *Reneer*, Justice Leibson expressed serious concern with the combined sentencing/PFO hearing authorized by KRS 532.055(3):

The "nature of prior offenses" is a much broader term than present limitations applicable to the use of prior felonies in PFO proceedings. At present, evidence is limited to designating the offense involved, but *none* of the details of the nature of the prior offenses are admitted.

. . .

As a practical matter it is impossible to follow the statutes and decisions applicable to the PFO procedure and the provisions of the new statutes in a single proceeding, because they are in direct conflict.

The majority decision proposes that "the jury in the combined bifurcated hearing could be instructed to (1) fix a penalty on the basic charge in the indictment; (2) determine then whether the defendant is guilty as a persistent felony offender, and if so; (3) fix the enhanced penalty as a persistent felony offender." The practical effect of this is inherently abusive. The jury hears, at the same time, evidence that is now permissible in setting a sentence for the underlying offense but which is improper for deciding (a) whether a person is guilty as a PFO, and (b) if so, the proper enhanced penalty as a PFO.

*Id.* at 801–803.

Notwithstanding, the *Reneer* majority concluded that such information was relevant and essential so that jurors are not required to "sentence in a vacuum without

any knowledge of the defendant's past criminal record or other matters that might be pertinent to consider in the assessment of the appropriate penalty." *Id.* at 797.

In *Lemon v. Commonwealth,* Ky.App., 760 S.W.2d 94 (1988), the Court of Appeals was confronted with validity of the combined PFO/Truth in Sentencing phase. In ruling that *Reneer, supra,* was dispositive of the issue, the Court of Appeals commented that the combined hearing format was approved " 'because the same evidence that is pertinent toward fixing the penalty is also pertinent for consideration in the enhancement of sentence....'" *Lemon, supra,* at 95 (*citing Reneer* at 798.)

Given the language of KRS 532.055(3) and the *Reneer* decision, the trial court properly held that the details of the indictment were admissible. Further, we find nothing in the language of the indictment that exceeds the scope of evidence held to be admissible in *Robinson v. Commonwealth,* Ky., 926 S.W.2d 853 (1996). The indictment provided nothing more than a "general description" of the crime with which Appellant was charged. *See also Williams v. Commonwealth,* Ky., 810 S.W.2d 511, 513 (1991).

## VI. PROSECUTORIAL MISCONDUCT

Appellant challenges the prosecutor's statement during closing argument that "We didn't hear from the defendant's mother. He could've called her but he didn't." Appellant moved for a mistrial, claiming that the statement effectively conveyed that he had not offered sufficient proof. The trial court denied Appellant's motion because the jury had already been instructed that the Commonwealth, not Appellant, had the burden of proof. Appellant now claims that the prosecutor's comment was prejudicial and denied him

his right to a fair trial. We find no basis for this assertion.

When prosecutorial misconduct is claimed, the relevant inquiry on appeal should always center around the overall fairness of the trial, not the culpability of the prosecutor. *Commonwealth v. Petrey,* Ky., 945 S.W.2d 417 (1997); *Slaughter v. Commonwealth,* Ky., 744 S.W.2d 407 (1987), *cert. denied,* 490 U.S. 1113, 109 S.Ct. 3174, 104 L.Ed.2d 1036 (1989). In this case, the overall fairness of the trial was not compromised in any manner by the prosecutor's comment. According to the evidence, Appellant's mother was present in the house during the entire disputed drug transaction. And Appellant's sole defense was that it was not his voice on the audio tape. Under these facts, it is significant that Appellant did not call his mother as a witness to corroborate his defense by testifying that someone else came into the house and sold the drugs to Crockett. Since the overwhelming weight of the evidence pointed towards Appellant's guilt, the prosecutor did not prejudice Appellant by pointing out that the one person who could absolve him of guilt did not testify. Additionally, prosecutors are allowed wide latitude during closing arguments and may comment upon the evidence presented. *Derossett v. Commonwealth,* Ky., 867 S.W.2d 195 (1993); *Houston v. Commonwealth,* Ky.App., 641 S.W.2d 42 (1982). In this instance, the prosecutor's statement was simply a reasonable comment on the evidence, well within the limits of acceptable conduct.

For the foregoing reasons, the judgment and sentence of the McCracken Circuit Court are affirmed.

All concur.