Leonard MARTIN, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

No. 2004–SC–000718–MR.

Supreme Court of Kentucky.

Aug. 25, 2005.

Ned Barry Pillersdorf, Joseph R. Lane, Pillersdorf, Derossett & Lane, Prestonsburg, Counsel for Appellant.

Gregory D. Stumbo, Attorney General of Kentucky, Brian T. Judy, Assistant Attorney General, Criminal Appellate Division, Office of the Attorney General, Frankfort, Counsel for Appellee.

Appellant, Leonard Martin, was convicted of three counts of sexual abuse in the first degree and one count of sodomy in the first degree. The jury recommended a sentence of five years for each count of sexual abuse, for a total of fifteen years, and a sentence of twenty-five years for the sodomy count, the sentences to run concurrently. The court entered a judgment

sentencing Appellant to serve twenty-five years. Appellant appeals to this Court as a matter of right,[1] asserting three claims of reversible error: (1) that double jeopardy bars Appellant's retrial; (2) that the Commonwealth's use of prior uncharged bad acts were not so similar to warrant their introduction and therefore prejudiced Appellant; and (3) other errors made by the trial court either alone, or cumulatively with the previous errors, so prejudiced Appellant that his conviction should be reversed. Having considered all of Appellant's claims of error, we affirm the conviction.

Appellant was charged with the sexual abuse and the sodomy of his five year old step-granddaughter L.H.[2] During the Christmas holiday of 2000–01, L.H. visited her biological grandmother and Appellant in Kentucky. Because L.H.'s grandmother became ill, L.H. spent a significant period of time with Appellant. During this time, Appellant sexually abused L.H. on numerous occasions. The incidents were described as consisting of Appellant rubbing L.H.'s private parts with his finger and his penis. Toward the end of L.H.'s visit, the Appellant coerced L.H. into performing oral sex on him. During each incident, L.H.'s grandmother was either asleep or had gone to the store. To induce L.H. to participate, Appellant always promised L.H. ice cream for allowing him to touch her. Following each occurrence, the Appellant warned L.H. that if she told anyone she would get in trouble. When the visit was over, L.H. returned to her home in Michigan. It was not until May of 2001, when another visit for the summer

was arranged, that L.H. told her mother of the sexual abuse that had occurred over the last Christmas visit.

L.H.'s mother promptly contacted the Michigan police. Slowly, in bits and pieces, more accounts of sexual abuse were revealed by L.H. Upon being interviewed by authorities, L.H. told of times, prior to her visit to Kentucky, that Appellant had sexually abused her in Michigan. It wasn't until L.H. and her mother returned to Kentucky to pursue charges against Appellant that L.H. finally informed her mother of the sodomy. In October of 2003 Appellant was tried on three counts of first-degree sexual abuse and one count of first-degree sodomy. That trial ended in a mistrial upon motion by Appellant. When the Commonwealth retried Appellant on all counts the jury returned a guilty verdict and the court imposed a twenty-five year sentence.

## I. DOUBLE JEOPARDY

Appellant first argues that he was tried a second time in violation of his rights under the Double Jeopardy Clauses.[3] Appellant did not object prior to commencement of his second trial and he admits that his claim of error is unpreserved. However, double jeopardy questions may be reviewed on appeal despite failure to preserve the issue at trial.[4] And in this case Appellant presents a discrete argument concerning alleged prosecutorial provocation.

Appellant's first trial came to an abrupt end with the trial court's declaration of a mistrial. The mistrial was granted follow-

---

1. KY. CONST. § 110(2)(b).

2. L.H. is a minor and therefore her initial will be used.

3. KY. CONST. § 11; U.S. CONST. amend. V.

4. *Beaty v. Commonwealth*, 125 S.W.3d 196, 210 (Ky.2003); *Baker v. Commonwealth*, 922 S.W.2d 371, 374 (Ky.1996); *Sherley v. Commonwealth*, 558 S.W.2d 615, 618 (Ky.1977) ("failure to preserve this issue for appellate review should not result in permitting a double jeopardy conviction to stand").

ing the Commonwealth's direct examination of witness, David Porter. Porter was called by the Commonwealth as a rebuttal witness to Appellant's cross-examination of the Commonwealth's witness, Iris Martin. Martin is the ex-wife of the Appellant and grandmother of the victim, L.H. Martin testified on cross-examination that she filed for divorce after the Appellant was arrested. Martin asserted that she filed her divorce petition before Appellant filed his. Upon this declaration, the defense introduced the Appellant's divorce petition in order to impeach Martin's testimony. The petition erroneously showed that Appellant was the first to file. Near the close of the Commonwealth's case in chief, the Commonwealth put David Porter on the stand. Porter was Iris Martin's divorce attorney. Through Porter, the Commonwealth presented evidence that Martin did indeed file her divorce petition first. Then, the Commonwealth continued its direct examination, "So if anyone, Mr. Porter, in this trial, including Mr. Patton [the defense attorney], would suggest that Iris Martin did not file for divorce, obviously would that be just completely untrue, patently false?" Mr. Porter responded, "That would be untrue, yes." The Commonwealth continued, "That would be something that clearly would mislead this jury?" Following this question by the Commonwealth, Appellant's counsel properly objected and the parties met in

judge's chambers to discuss Appellant's motion for mistrial based on the Commonwealth's comment suggesting the defense was misleading the jury. After arguments were heard from both parties, the trial judge ordered a mistrial.

Appellant's double jeopardy argument is that the Commonwealth's question, which led to the declaration of the mistrial by the trial court, was overreaching and fundamentally unfair. Appellant asserts that the Commonwealth intended to provoke or goad Appellant into moving for a mistrial because the trial had several potential reversible errors. The Commonwealth argues in response that it was only rebutting an untruthful fact that was presented by Appellant and that there was absolutely no intent to provoke a mistrial.

■■■ The double jeopardy rule is that a motion for mistrial by a defendant removes the double jeopardy bar to retrial.[5] However, there exists a limited exception where this bar will not be removed.[6] The exception allows double jeopardy to bar retrial where the prosecutor's conduct intended to provoke the defendant into moving for a mistrial.[7] "[T]he conduct giving rise to the order of mistrial [must be] precipitated by bad faith, overreaching or some other fundamentally unfair action of the prosecutor or the court."[8]

In the case before us, due to the requirement that double jeopardy questions be reviewed even if unpreserved,[9] this

5. *Stamps v. Commonwealth*, 648 S.W.2d 868, 868 (Ky.1983) (citing *Commonwealth v. Lewis*, 548 S.W.2d 509, 510 (Ky.1977); *United States v. Dinitz*, 424 U.S. 600, 96 S.Ct. 1075, 47 L.Ed.2d 267 (1976)); *United States v. Tateo*, 377 U.S. 463, 467, 84 S.Ct. 1587, 12 L.Ed.2d 448 (1964) (if defendant "requested a mistrial ..., there would be no doubt that if he had been successful, the government would not have been barred from retrying him,").

6. *Stamps*, 648 S.W.2d at 869.

7. *Oregon v. Kennedy*, 456 U.S. 667, 102 S.Ct. 2083, 72 L.Ed.2d 416 (1982); *Stamps*, 648 S.W.2d at 869.

8. *Tinsley v. Jackson*, 771 S.W.2d 331, 332 (Ky.1989) (citing *United States v. Love*, 597 F.2d 81 (6th Cir.1979), and *United States v. Larry*, 536 F.2d 1149 (6th Circ.1976), and *Tamme v. Commonwealth*, 759 S.W.2d 51 (Ky. 1988)).

9. *Beaty*, 125 S.W.3d at 210 (We address it under the authority of *Sherley*, 558 S.W.2d at

Court has reluctantly examined the facts of the first trial in order to discern whether the Commonwealth intended to provoke Appellant into moving for a mistrial. When the mistrial occurred, the Commonwealth had entered its third day of presenting its case in chief. Earlier in the trial, following the cross-examination of Iris Martin, the defense moved for a mistrial based on Martin's continuous failure to refrain from making statements regarding Appellant's guilt. The trial judge overruled that motion and strongly admonished the jury to disregard the witness's comments. The trial judge warned the prosecutor that the issue of a mistrial might have to be revisited. David Porter was the Commonwealth's seventh and last likely witness. It was then that the Appellant made his second motion for a mistrial. In response to the motion, the Commonwealth defended its "misleading the jury" comment as merely rebuttal and clarification for the jury. The Commonwealth repeatedly apologized if the questioning was interpreted as intentional harassment of the defense. The trial judge's consideration of this second and final motion for a mistrial was thorough. The trial judge was quite reluctant to grant the motion but expressed the necessity for a mistrial. The trial court based its decision on the line of questioning, the fact the Commonwealth had named the defense attorney, and that the Commonwealth said that this would "clearly mislead the jury."

The actions taken by the Commonwealth during the questioning of witness David Porter may be described as inappropriate.[10] However, with the proof before this Court, the scale weighs more heavily toward a mistake and not intentional provocation. The conduct by the prosecution does not rise to the level of bad faith, overreaching or such fundamental unfairness as so asserted by the Appellant. There is no indication that the prosecutor did not vigorously resist the defendant's motion for mistrial or that the trial court found the prosecutor intended to goad the defense. It is implausible to suggest that the Commonwealth intended to provoke a mistrial, not because it knew a conviction could not be obtained, but that a conviction would be obtained with attendant reversible error. Based on the actions by the Commonwealth, Appellant was granted the mistrial the trial court thought he deserved. However, there was no double jeopardy violation.

## II. PRIOR BAD ACTS

■ Appellant's second argument surrounds the introduction of evidence of prior uncharged bad acts. The issue was preserved for review by the Appellant's pretrial and trial objections. The Appellant asserts that the trial court committed reversible error when it allowed the testimony of T.M.[11] and Lo.H.[12] to be used by the Commonwealth to prove modus operandi. The Appellant argues that the inci-

618 "Failure to preserve this issue for appellate review should not result in permitting a double jeopardy conviction to stand"); *Gunter v. Commonwealth*, 576 S.W.2d 518, 522 (Ky. 1978); *Baker v. Commonwealth*, 922 S.W.2d 371, 374 (Ky.1996); and *Butts v. Commonwealth*, 953 S.W.2d 943, 944–45 (Ky.1997).

**10.** *Faulkner v. Commonwealth*, 423 S.W.2d 245, 248 (Ky.1968) (citing *Edwards v. Commonwealth*, 298 Ky. 366, 182 S.W.2d 948, 951 (1944) ("while [a prosecuting attorney] may

strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one.")).

**11.** T.M. is a minor and therefore her initials will be used.

**12.** Lo.H. was a minor at the time of the abuse and therefore her initial will be used.

dences involving T.M., Lo.H., and L.H., the victim in this case, were not strikingly similar. Further, he asserts that any facts the Commonwealth describes as strikingly similar would identify a substantial portion, if not the majority, of all cases involving child sexual abuse.

■ KRE 404(b) provides that evidence of other crimes, wrongs, or acts are not admissible to prove character. However, an exception to this rule is that evidence of other crimes, wrongs or acts may be admitted to show "motive, identity, absence of mistake or accident, intent, or knowledge, or common scheme or plan."[13] If evidence is offered to show modus operandi, the facts surrounding the prior bad acts must be so strikingly similar to the charged offense as to show "(1) the acts were committed by the same person, and/or (2) the acts were accompanied by the same *mens rea*."[14] Whether there exist common facts between the acts is the relevant examination, not whether there was common criminality.[15] The testimony of T.M. and Lo.H. described similar instances of sexual abuse. The prior wrongs and the current charged offenses all involved victims that were: (1) family of the Appellant or his wife at the time of the occurrence; (2) female; (3) between the ages of five to eleven years old at the time of the abuse; (4) under the care of the Appellant when the abuse occurred; (5) alone with the Appellant when no other adults were present or if present, were asleep in a separate room; (6) bribed with something of importance to a child (money, ice cream, shopping, etc.); (7) abused by similar touching of the vaginal area, always without penetration; and (8) threatened that if they told they would get into trouble. The similarities are akin to the ones described in *Commonwealth v. English*, in which this Court held that the evidence of prior wrongs was sufficiently similar to the facts related to the victim.[16]

■ Appellant argues that the dissimilarities between the prior wrongs and those of the victim destroy any similarity that may exist. The dissimilarities include: (1) that the incidents with T.M. and L.H. sometimes occurred while both of those minors were present, while the incidents involving Lo.H. always occurred when no one else was present; (2) that none of the incidents involving T.M. and Lo.H. involved sodomy; and (3) that Lo.H. was bribed with shopping rather than ice cream. Although these dissimilarities do exist, the prior bad acts do not have to be identical to that of the charged offense. The evidence shows sufficient similarity between the occurrences of sexual abuse to establish modus operandi and to satisfy the test of relevancy. Once relevancy is established, evidence of prior sexual misconduct is properly admitted unless the danger of undue prejudice outweighs its probative value.[17] This balancing is within

---

13. KRE 404(b)(1); *Pendleton v. Commonwealth*, 685 S.W.2d 549, 552 (Ky.1985).

14. *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky.1999) (citing *Billings v. Commonwealth*, 843 S.W.2d 890, 891 (Ky.1992); *Adcock v. Commonwealth*, 702 S.W.2d 440 (Ky.1986)).

15. *Lear v. Commonwealth*, 884 S.W.2d 657, 659 (Ky.1994); *Billings*, 843 S.W.2d at 892.

16. 993 S.W.2d at 945 (holding sufficiently similarity existed on only five similar characteristics: (1) the victims were prepubescent females; (2) the familial relationship to each victim; (3) Each incident occurred while the victim was a visitor to Appellant's home and took place on a couch or chair; (4) Each incident occurred while the Appellee's wife was present in the home; and (5) each incident consisted of Appellee touching the victim's vaginal area.)

17. KRE 403; *English*, 993 S.W.2d at 945.

the sound discretion of the trial judge and will not be overturned unless an abuse of discretion can be discerned.[18] "The test of abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles."[19] Therefore, without further argument by Appellant that the prior wrongs introduced were an abuse of discretion by the trial judge, the testimony of Lo.H. and T.M. was properly admitted.

## III. OTHER ERRORS

The final claim of reversible error made by the Appellant involves several other errors that Appellant argues either alone or cumulatively violated Appellant's right to a fair trial. Those errors include: (1) that specific statements made by T.M. and Lo.H. during their testimony were made for no other purpose than to inflame the jury; (2) that the Commonwealth was improperly allowed to bolster the testimony of L.H. with the testimony of Cassandra Worth, L.H.'s mother, and the testimony of Detective Ken May; (3) that an outburst from the gallery impacted the jury's decision regarding the penalty; and (4) that the jury was erroneously required to return to deliberations after it had indicated it could not reach a unanimous decision as to the sodomy count. All errors were properly preserved for review either by motion or objection.

In regard to the claim of error that the statement made by T.M. was made only to prejudice the jury against Appellant, it is preserved by means of Appellant's motion for a mistrial. During direct examination, T.M. responded to a question by the Commonwealth with, ". . . I don't want to see anybody get hurt like we did." The standard of review is whether the trial judge abused his discretion by denying Appellant's motion for a mistrial.[20] A manifest necessity for a mistrial must exist before it will be granted.[21] The trial judge denied the motion for a mistrial and instead admonished the jury. It is presumed that the jury follows a trial judge's admonition.[22] Therefore, since Appellant has failed to show any actual prejudice, the trial judge's denial of the motion for mistrial was correct.

In regard to Appellant's claim that Lo. H.'s statement was made only to prejudice the jury, it is preserved by means of Appellant's motion to strike.[23] During direct examination by the Commonwealth, Lo.H. responded to a question with, "I have mixed feelings about being here... but when I found out about my niece and this other little girl, I had to come tell." The trial judge held that this statement was not to the same degree as the one made by T.M. and therefore overruled the objection and did not admonish the jury. Appellant has failed to show any actual prejudice that was sustained as a result of the trial

18. *Id.*, at 945 (citing *Rake v. Commonwealth*, 450 S.W.2d 527, 528 (Ky.1970); R. Lawson, *The Kentucky Evidence Law Handbook*, § 2.10 III, at 59–60 (4th ed. LexisNexis 2003)).

19. *English*, 993 S.W.2d at 945 (citing 5 Am. Jur.2d *Appellate Review* § 695 (1995); *cf. Kuprion v. Fitzgerald*, 888 S.W.2d 679, 684 (Ky.1994)).

20. *Maxie v. Commonwealth*, 82 S.W.3d 860, 863 (Ky.2002) (citing *Gould v. Charlton Co., Inc.*, 929 S.W.2d 734 (Ky.1996)).

21. *Maxie*, 82 S.W.3d at 863.

22. *Maxie*, 82 S.W.3d at 863 (citing *Alexander v. Commonwealth*, 862 S.W.2d 856, 859 (Ky. 1993), *overruled on other grounds by Stringer v. Commonwealth*, 956 S.W.2d 883 (Ky.1997), cert. denied, 523 U.S. 1052, 118 S.Ct. 1374, 140 L.Ed.2d 522 (1998)).

23. KRE 103(a)(1)

court's denial of Appellant's motion to strike Lo.H.'s statement. Therefore, the trial judge's ruling on the motion was not error.

Next, Appellant asserts that the testimony by two witnesses improperly bolstered the testimony of L.H. The first witness, Cassandra Worth, L.H.'s mother, was allowed to testify to statements made to her by L.H. in accordance with the prior consistent statements exception to the hearsay rule.[24] A trial judge's ruling regarding the admissibility of evidence is a discretionary matter and will only be overturned for an abuse of that discretion.[25] A prior consistent statement of a witness may be admitted into evidence if the statement is consistent with the declarant's testimony and there has been an implied charge of recent fabrication, improper influence or motive.[26] A prior consistent statement is not required to be exactly identical to that of which the declarant testified to.[27] On cross-examination L.H.'s testimony was attacked in part as a recent or improperly influenced fabrication.

Appellant asserts that Worth's testimony that L.H. had told her, "[P]apaw had f* * *d her" was not consistent with L.H.'s testimony and should have been excluded. After reviewing the record, Worth's hearsay statement is substantially similar to that of L.H.'s. Although L.H. did not use the same wording during her testimony as she did with her mother, Worth further testified that when L.H. made this statement L.H. didn't understand what she was saying and upon further discussion of what happened, Worth was able to discern what L.H. was trying to tell her. The trial court interpreted the cross-examination to charge recent fabrication and allowed the prior consistent hearsay statement on that basis. Therefore, without further indication that the trial court abused its discretion by allowing Worth to testify to rebut the attack on L.H., the trial judge's decision was correct. Moreover, in the context of this case, any error in this regard would be harmless.

Appellant argues that the testimony of Detective Ken May was used to bolster the testimony of L.H. Detective May testified that it was not unusual for children who are victims of sexual abuse to reveal the abuse in bits and pieces. The Commonwealth asserts that Detective May's testimony was based on his investigative experience in sexual abuse cases. Appellant responds that the record is devoid of any indication that Detective May was qualified as an expert. In overruling Appellant's objection to Detective May's testimony, the trial judge held that Detective May could testify to that which was consistent with his training, education, and background, but not to what L.H. had told him. The standard for deciding whether a trial judge correctly found an expert qualified to testify is abuse of discretion.[28] There is no indication from the record that the trial judge abused his discretion.[29] Detective May, as of the time of trial, had four and one-half years experience as a

**24.** KRE 801(a)(2)

**25.** *English,* 993 S.W.2d at 945.

**26.** KRE 801(a)(2)

**27.** *United States v. Vest,* 842 F.2d 1319 (1st Cir.1988).

**28.** *Fugate v. Commonwealth,* 993 S.W.2d 931, 933 (Ky.1999); *Gorman v. Hunt,* 19 S.W.3d 662, 665 (Ky.2000); *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).

**29.** KRE 702; FRE 702; *Satcher v. Honda Motor Co.,* 52 F.3d 1311, 1314 (5th Cir.1995) (holding a policeman with 29 years of experience in investigating motorcycle accidents).

detective assigned to the youth bureau, which deal with crimes involving minors, and had been trained by the State of Michigan to forensically interview child victims. Detective May's bureau handles approximately one-hundred-and-fifty to two-hundred child sexual abuse cases a year, with May handling approximately forty to fifty cases a year himself. Therefore, the trial judge's ruling that Detective May was qualified to testify to his experience in child sexual abuse cases was not an abuse of discretion.

Next, Appellant asserts that reversible error was committed by the trial court when it denied Appellant's motion to discharge the jury. This issue is preserved by means of Appellant's motion to discharge the jury. During the reading of the guilt phase verdict, crying was heard from the courtroom gallery. Appellant argues that the outburst impacted the decision of the jury as to the Appellant's punishment. In denying Appellant's motion, the trial judge said that the cry from the audience was more like a sob. Additionally, the jury returned a verdict of only twenty-five years when the possibility of life in prison was available. There was no prejudice.

Appellant asserts that reversible error was committed by the trial court when it ordered the jury to return to deliberations after the jury wrote a note stating it could not come to a unanimous vote on the sodomy count and asked for additional instruction. The judge held that since the trial had continued for three days and the jury had only been out less than an hour that further deliberation would be helpful. RCr 9.57(1) authorizes a trial judge to find further deliberations may be useful based on the circumstances. As in *Commonwealth v. Mitchell*, the jury had only conferred for a short time and this was its first question.[30] Again as in *Mitchell*, the jury only indicated it was divided, not deadlocked. Upon the jury's request for further instruction, the trial judge properly ordered the jury to return to continue deliberations.

Finally, Appellant argues that the accumulation of errors requires reversal. However, even if Appellant's arguments have merit, which this Court does not find, the jury's recommended sentence, along with the significant amount of evidence presented by the Commonwealth, indicates that no prejudice existed as to warrant a new trial.[31] "A defendant is not entitled to a perfect trial, but only a fair one."[32]

The judgment is affirmed.

LAMBERT, C.J., and GRAVES, JOHNSTONE, ROACH, SCOTT, and WINTERSHEIMER, JJ., concur.

COOPER, J., concurs in result only.

---

30. 943 S.W.2d 625, 627 (Ky.1997).

31. *Murray v. Commonwealth*, 473 S.W.2d 150, 152–53 (Ky.1971) (citing *See Wright v. Commonwealth*, 455 S.W.2d 561 (Ky.1970)).

32. *U.S. v. Dempsey*, 830 F.2d 1084, 1088 (10th Cir.1987).