# IMPORTANT NOTICE
# <u>NOT TO BE PUBLISHED OPINION</u>

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED."
PURSUANT TO THE RULES OF CIVIL PROCEDURE
PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C),
THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE
CITED OR USED AS BINDING PRECEDENT IN ANY OTHER
CASE IN ANY COURT OF THIS STATE; HOWEVER,
UNPUBLISHED KENTUCKY APPELLATE DECISIONS,
RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR
CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED
OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE
BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION
BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED
DECISION IN THE FILED DOCUMENT AND A COPY OF THE
ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE
DOCUMENT TO THE COURT AND ALL PARTIES TO THE
ACTION.

RENDERED: JUNE 15, 2017
NOT TO BE PUBLISHED

# Supreme Court of Kentucky FINAL

2016-SC-000348-MR

DATE 8/24/17 Kim Redman, DC

SIMEON MCKINNIE                                                APPELLANT

ON APPEAL FROM KENTON CIRCUIT COURT
V.      HONORABLE PATRICIA M. SUMME, JUDGE
NO. 15-CR-00199-001

COMMONWEALTH OF KENTUCKY                                       APPELLEE

## MEMORANDUM OPINION OF THE COURT

### AFFIRMING

A Kenton County jury found Simeon McKinnie guilty of first-degree manslaughter, first-degree assault, first-degree wanton endangerment, and two counts of first-degree robbery. Consistent with the jury's sentencing recommendations, the trial court fixed his sentence at fifty-five years' imprisonment.

McKinnie now appeals as a matter of right, Kentucky Constitution § 110(2)(b), arguing that the trial court erred by: (1) overruling his motion to compel production of the Commonwealth's interview with a witness; (2) permitting the Commonwealth to make allegedly-improper statements during its closing argument regarding the absence of a defense witness; and (3) refusing to instruct the jury on facilitation. For the reasons set forth below, we affirm the trial court.

# I. BACKGROUND[1]

On January 21, 2015, Simeon McKinnie sought to obtain a half-pound of marijuana. He contacted Matthew Bowling, who then contacted David Abney. Abney, in turn, contacted Ronald Hudson, who he knew sold marijuana. The next day, Abney met with Bowling, and the two went to pick up McKinnie on Holman Street in Covington. McKinnie was unexpectedly accompanied by DeLaun Hayes. The four—Abney, Bowling, McKinnie, and Hayes—traveled together from Holman Street en route to Hudson's house on Hand's Pike.

In the meantime and unbeknownst to Abney and Bowling, McKinnie had another plan. He had contacted Charles Knox prior to joining Abney and Bowling. McKinnie asked Knox to give him a ride to obtain marijuana; however, McKinnie never intended to ride with Knox, rather, he intended for Knox to follow him to Hudson's. Knox, not owning a car, contacted Tara Little, who agreed to drive Knox to the drug deal in exchange for gas money. When Knox and Little arrived at Hayes's house to pick up McKinnie, he was not there. Instead, McKinnie's step-brother, John Palmer, got in the car and said McKinnie was in a truck around the corner. Confused, Knox called McKinnie, who told him to follow the truck.

Both vehicles made their way to Hudson's house. Along the way, Little's vehicle was separated from Bowling's, and Hayes called Knox to see where he was. Hayes told Knox they would wait for him at a Speedway gas station on Madison Avenue; McKinnie told Bowling to stop at the gas station so he could

---

[1] Each witness's account of the events that occurred January 22, 2015 varied from witness to witness; therefore, our summary of the events reflects the jury verdict.

get something to drink. After Little's vehicle caught up to Bowling's, the two vehicles continued to Hudson's.[2]

When the group arrived at Hudson's house, Bowling parked in the driveway, while Little parked on a side street and waited with her engine running. McKinnie and Hayes told Abney that they wanted to see the marijuana before they bought it. Abney, not wanting to bring someone new into Hudson's home, went inside alone and brought a small amount of the marijuana out to McKinnie and Hayes. The two then told Abney that they wanted to see the entire amount weighed. Abney conveyed this information to Hudson, who told Abney to take McKinnie and Hayes to the garage, where he would meet them.

Abney, Bowling, McKinnie, and Hayes got out of the car and headed into Hudson's garage. After they entered, Hayes asked again to look at the marijuana. Hudson gave him the bag and then asked if "the deal was going to go down." Hayes responded, "Yeah, but it's going to go down like this" and both Hayes and McKinnie pulled out pistols. Abney then lunged for Hayes, attempting to knock the marijuana and gun from his hand. While it is clear from witness testimony that both Hayes and McKinnie fired their pistols, it is unclear who shot whom. Ultimately, however, both Abney and Hudson were shot, and Hudson died of his wounds.

After the shots were fired, McKinnie took the marijuana, and he and Hayes ran from the garage. The two ran to Little's car, and the group drove to

---

[2] It appears that Bowling and Abney were unaware that a vehicle was following them.

3

Hayes's grandmother's house, where McKinnie, Hayes, Palmer, and Knox divided up the marijuana, and McKinnie and Hayes disposed of their pistols.[3] McKinnie was charged with first-degree manslaughter, first-degree assault, and two counts of first-degree robbery, and these proceedings commenced. We set forth additional facts as necessary below.

## II. ANALYSIS

### A. The trial court did not err by overruling McKinnie's motion to compel.

Following his arrest, Hayes was interviewed by Detective West of the Covington Police Department, with the Commonwealth's Attorney and an Assistant Commonwealth's Attorney present. However, the Commonwealth neither recorded Hayes's statement nor obtained a written statement.

During discovery, McKinnie sought to compel the Commonwealth to produce the contents of its interview with Hayes. The Commonwealth stated it did not intend to introduce any statements of Hayes at trial, and that none of Hayes's statements were exculpatory. McKinnie argued that those statements were subject to cross-examination; thus, through impeachment, any statements Hayes made were exculpatory.

The trial court overruled McKinnie's motion, noting that, while Kentucky Rule of Criminal Procedure (RCr) 7.24(1) requires the Commonwealth to disclose the substance of any oral incriminating statement made by a defendant to any witness, RCr 7.24(2) excludes discovery of memoranda "of

---

[3] Little dropped the other four off at Hayes's grandmother's house and left. It appears that she had no knowledge of the plan to rob Hudson, nor of what had transpired at Hudson's house.

4

police officers and agents of the Commonwealth . . . of statements made to them by witnesses . . . ." The trial court correctly read and applied the rule.

On appeal, McKinnie argues that the trial court's ruling impeded his ability to present a defense and to cross-examine Hayes. We disagree. We note that the instant matter is not dissimilar from *Henson v. Commonwealth*, No. 2006-SC-000490-MR, 2008 WL 3890041 (Ky. Aug. 21, 2008). In *Henson*, this Court held that the Commonwealth was not required to disclose information that a detective obtained but did not include in his official report. *Id.* at *8. In reaching our decision, we noted that, like the instant matter, "the Commonwealth had no written or recorded statement from [the witness]." *Id.* at *7. Furthermore, this Court has long held that the Commonwealth is not obligated to disclose information that was not recorded:

> Despite the fervor with which Appellant presses this issue, he is unable to cite, and we are unable to find, any rule or precedent which would require the Commonwealth [to advise the defense of additional, non-exculpatory information outside the witness's written statement]. RCr 7.26(1) is clear in requiring only written statements to be made available for use by the defendant.

*Yates v. Commonwealth*, 958 S.W.2d 306, 307 (Ky. 1997).

Although it is not clear, it appears McKinnie is arguing that the Commonwealth should be required to preserve the statements of witnesses it interviews. However, neither our rules nor our precedent require as much of the Commonwealth. *See Carroll v. Commonwealth*, 2003-SC-000566-MR, 2005 WL 2318966 (Ky. Sept. 22, 2005), at *3 ("Though the defense would undoubtedly love to have access to every item of paper generated, officially or

5

unofficially, by law enforcement officers connected with its case, the rules simply do not sustain such a requirement.").

Finally, we note that the Commonwealth never introduced any statements attributable to Hayes's interview with Detective West and the Commonwealth's Attorneys, nor did McKinnie ever identify what particular statement may have been exculpatory; therefore, "the mere possibility that an item of undisclosed information *might* have helped the defense, or *might* have affected the outcome does not establish materiality in the constitutional sense." *Id.* (citing *St. Clair v. Commonwealth*, 140 S.W.3d 510, 541 (Ky. 2004)) (emphasis added). For these reasons, we hold that the trial court did not err by overruling McKinnie's motion to compel.

## B. The trial court did not err by overruling McKinnie's objection to the Commonwealth's comment during closing argument.

During the Commonwealth's guilt-phase closing argument, it made the following statement to the jury:

> [If the story that Simeon McKinnie told were true,] then John Palmer was with him at the recording studio.[4] John Palmer went with him to DeLaun Hayes's house. John Palmer was in the house and then went out and got into Charles Knox's car—the car that originally, Mr. McKinnie said he didn't see until Speedway but later on, said that, 'No, it was at Hayes's house because Palmer got into it.' But if this wasn't a robbery from the get-go . . . if it wasn't talked about in Hayes's house, then John Palmer could have told you that. If the defendant didn't know that Charles Knox was going to be the getaway driver, John Palmer could have told you that. If the defendant didn't have a gun on him that day, John Palmer—

---

[4] There was testimony elicited during trial that Palmer and McKinnie were together hours before the robbery while McKinnie recorded music at a recording studio.

6

At this point, McKinnie objected, arguing that it was improper for the Commonwealth to speculate as to why McKinnie did not call Palmer to testify. The Commonwealth's Attorney responded that he knew of no rule or precedent prohibiting him from commenting on a witness's absence. The trial court overruled McKinnie's objection, and the Commonwealth continued:

> If this defendant never— if the robbery was never discussed, John Palmer could have told you that. If it wasn't a getaway car from the get-go, John Palmer could have told us that. If the defendant— if John Palmer was supposed to be going home and not in the car the whole time, he could have told us that. If the defendant didn't have a gun on him that day, John Palmer could have told us that— he's the defendant's own brother. But we never heard John Palmer say those things because John Palmer isn't here and didn't testify.

McKinnie now argues that the trial court erred in overruling his objection.

As the Court stated in *Brown v. Commonwealth*, "When the defendant testifies, the prosecutor is allowed to comment on the defendant's credibility." 313 S.W.3d 577, 630 (Ky. 2010) (citing *Tamme v. Commonwealth*, 973 S.W.2d 13 (Ky. 1998)). In the instant matter, the Commonwealth's allegedly-improper comments were directed at disproving McKinnie's testimony on the witness stand. In commenting on a defendant's credibility, the Commonwealth may note "the absence of obvious witnesses where the absence tends to belie the defendant's claims." *Id.* (citing *Maxie v. Commonwealth*, 82 S.W.3d 860 (Ky. 2002)).

Furthermore, although, McKinnie contends on appeal that the Commonwealth was introducing facts outside of the evidence, we discern no such conduct. Each of the Commonwealth's statements-at-issue refute McKinnie's testimony. "In this instance, the prosecutor's statement was simply

7

a reasonable comment on the evidence, well within the limits of acceptable conduct." *Maxie,* 82 S.W.3d at 866. As such, the trial court's ruling was not in error.

## C. The trial court did not err by refusing to instruct the jury on a facilitation charge.

Finally, McKinnie contends that the trial court erred when it refused to give the jury a facilitation instruction. A defendant is guilty of facilitation when "with knowledge that another person is committing or intends to commit a crime, he engages in conduct which knowingly provides such person with means or opportunity for the commission of the crime and which in fact aids such person to commit the crime." Kentucky Revised Statute (KRS) 506.080(1).

McKinnie concedes that his own testimony precluded a facilitation instruction because he testified that he did not know about the robbery or that any criminal activity was planned. However, he argues on appeal that, based on *Hayes's* testimony, the jury could have found that McKinnie was a disinterested party who facilitated Hayes's robbery of Hudson.

In essence, the jury could have believed two narratives describing the subject-incident: 1) McKinnie's version, *i.e.,* he had no idea the robbery was going to occur; or 2) Hayes's version, *i.e.,* McKinnie was a participant in the robbery. Both versions preclude a facilitation instruction because the former narrative refutes the theory that McKinnie had "knowledge that another person intended to commit a crime," and the latter narrative suggests McKinnie's active participation as an accomplice to the robbery.

8

Although McKinnie would have this Court believe parts of Hayes's testimony while disregarding others, the jury heard the entirety of Hayes's testimony. The jury heard evidence that both Hayes and McKinnie were armed at Hudson's house; that McKinnie initiated the drug deal; that McKinnie insisted the group go into Hudson's garage to weigh the marijuana; that McKinnie coordinated a getaway vehicle via Knox; that McKinnie pulled out a pistol and shot toward Hudson and Abney; and that McKinnie ran out of the garage with the half-pound of marijuana following the shooting. The jury heard no testimony indicating that McKinnie simply facilitated the robbery. *Compare Smith v. Commonwealth*, 722 S.W.2d 892, 897-98 (Ky. 1987) ("[Smith] never asserts that he knew of his companion's intentions. In the absence of such knowledge, Smith could not be guilty of criminal facilitation to murder. KRS 506.080 requires knowledge of intent to commit a crime."), *with Chumbler v. Commonwealth*, 905 S.W.2d 488, 498-99 (Ky. 1995) (holding that there was sufficient evidence to support a facilitation instruction because there was *no testimony* elicited from the defendant regarding whether she knew of her companion's intention to commit a crime and the defendant's knowledge thereof could be inferred from her conduct) (emphasis added). In the instant matter, the testimony elicited at trial was insufficient to support a facilitation instruction; therefore, we hold that the trial court did not err by refusing to instruct the jury on facilitation.

## III. CONCLUSION

For the foregoing reasons, the judgment of the Kenton Circuit Court in this matter is affirmed.

All sitting. All concur.

COUNSEL FOR APPELLANT:

Julia Karol Pearson
Assistant Public Advocate
Department of Public Advocacy

COUNSEL FOR APPELLEE:

Andy Beshear
Attorney General of Kentucky

Gregory C. Fuchs
Assistant Attorney General