# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED."
PURSUANT TO THE RULES OF CIVIL PROCEDURE
PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C),
THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE
CITED OR USED AS BINDING PRECEDENT IN ANY OTHER
CASE IN ANY COURT OF THIS STATE; HOWEVER,
UNPUBLISHED KENTUCKY APPELLATE DECISIONS,
RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR
CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED
OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE
BEFORE THE COURT.  OPINIONS CITED FOR CONSIDERATION
BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED
DECISION IN THE FILED DOCUMENT AND A COPY OF THE
ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE
DOCUMENT TO THE COURT AND ALL PARTIES TO THE
ACTION.

RENDERED: FEBRUARY 24, 2022
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

2020-SC-0540-MR

EDWARD SIDDENS                                                  APPELLANT

V.               ON APPEAL FROM ALLEN CIRCUIT COURT
HONORABLE JANET J. CROCKER, JUDGE
NOS. 18-CR-00052 & 18-CR-00053

COMMONWEALTH OF KENTUCKY                        APPELLEE

**MEMORANDUM OPINION OF THE COURT**

**<u>AFFIRMING</u>**

In this matter of right appeal, Edward Siddens alleges that the trial court did not adequately consider mitigating factors when determining his sentence. *See* KY. CONST. § 110(2)(b). Because no evidence suggests that the trial court did not consider mitigating factors, we affirm the judgment of the trial court.

## I.      BACKGROUND

Edward Siddens had a difficult childhood, riddled with homelessness, domestic violence, and abandonment. Siddens suffered from multiple mental illnesses—including bipolar disorder and depressive disorder with suicidal ideations—starting at the age of 10. Siddens is also Autistic and has an alleged learning disability. According to testimony elicited at his eventual suppression hearing, underlying many of these issues were the abandonment and rejection

of his mother by his grandparents. His grandparents eventually adopted Siddens when he was 15.[1]

As an adult, Siddens continued to struggle with mental illness and began actively engaging in unlawful activities. In February of 2013, he was charged with Fraudulent Use of a Credit Card and Theft by Unlawful Taking of an Automobile valued at over $500 but less than $10,000. These charges were later resolved with a plea to a misdemeanor. That same month, he was admitted for a week to Vanderbilt Hospital for suicidal ideation, psychosis, and schizoaffective disorder. In spite of being prescribed medication to treat these ailments, Siddens did not continue taking them once released. Then, on September 28, 2014, he threatened to kill his grandfather while pointing a loaded firearm at him, resulting in a charge of Wanton Endangerment in the first degree. While incarcerated and awaiting trial on the Wanton Endangerment charge, Siddens was diagnosed with borderline personality disorder and depression. While serving his sentence after conviction, he was again prescribed medication for his mental illnesses. He was released December 1, 2015.

Upon his release, Siddens lived in a storage building on his grandparents' property. He lived in the storage building until May of 2017, at which point he again suffered from suicidal ideation severe enough to admit himself to an emergency room. While there, he told doctors he had not taken

---

[1] For clarity, we refer to Siddens's family members by their biological relationship to him.

his medication in at least a year. In his possession was a notebook containing a list of people. At the end of the list, Siddens had written "shoot on sight." Siddens did not deny the implication in his notebook; instead, when asked about it, he said he needed to "stand up for himself" and stop letting people push him around. The medical center diagnosed Siddens with major depressive disorder and cannabis-induced psychotic disorder. He was again prescribed medication. He was seen again in May by the Rural Health Clinic, who prescribed more medication. As a result of his distress, Siddens moved into his grandparents' home.

On August 14, 2017, Siddens threatened to kill his grandparents and uncle after they refused to provide him with marijuana. The event upset his grandmother enough for her to file a Petition for an Emergency Protective Order (EPO) against him. The EPO was granted, followed by a Domestic Violence Order (DVO), and Siddens was taken back to the emergency room with suicidal ideation, depression, and homicidal ideation. After initial treatment, he was taken to Western State Psychiatric Hospital on August 15, 2017.

Siddens was discharged ten days later on August 25, 2017. He left having been, again, prescribed medication for his condition, and was instructed to attend follow-up appointments to check on his progress. He attended no such appointments and did not keep up with his medication. He moved back into the storage building on his grandparents' property. He went back to the Rural Health Clinic two more times: on November 19, 2017, and February 14, 2018. Both times, he was again diagnosed with several severe

3

mental conditions, including suicidal and homicidal ideations. After the February visit, he was again prescribed medication which he, again, did not take.

On February 17, 2018, three days after visiting the Rural Health Clinic, Siddens asked his grandmother for $30. She said no. Because of this, Siddens made a plan to kill his grandmother, grandfather, and uncle. The next day, he executed his plan, ensuring that he killed his uncle first (since he would be most likely to fight or run), then killing his grandparents. The bodies were found by the Kentucky State Police later that day in front of the house where they had fallen. Siddens had shot his uncle 24 times, his grandmother 17 times, and his grandfather 10 times. After fleeing in a vehicle stolen from his grandfather, Siddens was apprehended in Colorado, where he confessed to the crimes.

On March 28, 2018, Siddens was indicted for three counts of Murder, one count of Violating a DVO, one count of Theft by Unlawful Taking over $500, and for being a second-degree persistent felony offender. Originally, the Commonwealth sought the death penalty. However, in exchange for Siddens's guilty plea, the Commonwealth withdrew its request. Instead, Siddens's sentence was left to the discretion of the trial court. That court held a sentencing hearing on September 1, 2020. The hearing lasted over six hours. During the hearing, the trial court heard extensive evidence of mitigating and aggravating factors, including Siddens's troubled childhood, extensive history with mental illnesses, and the nature of his crimes.

4

At the conclusion of the hearing, the trial court sentenced Siddens from the bench to life without the possibility of parole. While doing so, the trial court noted many of the factors elicited from the hearing, taking approximately twenty minutes to explain its ruling. Then, on October 7, 2020, the trial court entered its final judgment sentencing Siddens to imprisonment for life without the possibility of parole, along with a detailed memorandum again outlining its reasoning and with relevant caselaw supporting said reasoning.

Siddens appeals the judgment as a matter of right to this Court alleging that the trial court abused its discretion when it sentenced him to life imprisonment without the possibility of parole. Specifically, Siddens takes issue with the speed of the trial court's determination, claiming that the trial court "had already made up its mind" before the sentencing hearing began.

## II. STANDARD OF REVIEW

We review a trial court's sentencing determination for an abuse of discretion. *Howard v. Commonwealth*, 496 S.W.3d 471, 475 (Ky. 2016). When a trial court issues a sentence, it is afforded "immense discretion." *Id.* For this reason, we will only reverse a trial court's sentence where it is "arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999).

## III. ANALYSIS

A defendant is entitled to "due consideration of all applicable law" when sentenced. *Hughes v. Commonwealth*, 875 S.W.2d 99, 100 (Ky. 1994). This includes that a court must consider mitigating and aggravating factors that

5

may weigh in favor of either lighter or more severe sentences. *See, e.g.,* KRS 532.007; 532.025; 532.030. It is an abuse of discretion for a trial court to decide upon a sentence before a sentencing hearing takes place and without adequately considering mitigating and aggravating factors. *Edmonson v. Commonwealth*, 725 S.W.2d 595, 596 (Ky. 1987).

In *Edmonson*, this Court held that the trial court had violated its duty by deciding a sentence before the sentencing hearing occurred. In that case, immediately at the completion of the sentencing hearing, the judge "handed copies of the final judgment to counsel for the parties" on "pre-printed form[s]" where "the blanks had been filled in with a typewriter." *Id.* The judge would have had to prepare the judgment ahead of time in order to have orchestrated this immediate form of delivery. Thus, this Court ruled on appeal that the trial court had obviously flouted its duty to weigh factors from the sentencing hearing itself. *Id.*

Siddens argues that because the trial court issued its judgment from the bench, weeks before its written order and memorandum, it could not have adequately considered the mitigating evidence in favor of a lighter sentence.[2] Specifically, he claims that the trial court had "already made up its mind" regarding Siddens's sentence before his sentencing hearing, as was the case in *Edmonson*. However, here, the trial court clearly displayed from the bench that it had considered mitigating and aggravating circumstances. In particular, the

---

[2] Siddens presents no other evidence to indicate that the trial court had already made up its mind about his sentence before the hearing and without due consideration of mitigating factors.

trial court expressed concern over Siddens's consistent inability to follow various treatment plans, paired with his demonstrated tendency to fall into suicidal and homicidal ideation. Unlike in *Edmonson*, the trial court here made no formal, prepared document outlining the sentence ahead of time. Instead, the exact opposite occurred: the trial court took the time to fully flesh out evidence and caselaw supporting its decision even *after* delivering a sentence orally from the bench.

We find no similarity between *Edmonson* and the instant case, especially where no evidence points to the judge's decision being made in haste or pre-hearing. The trial court's sentence was not "arbitrary, unreasonable, unfair, or unsupported by sound legal principles," since the trial court reasoned (both from the bench and in its memorandum) that if Siddens was not imprisoned for the remainder of his life, he would continue to be a risk to himself and those around him. Further, a review of the record shows that the trial court actively engaged in the lengthy (over six hours) and complete hearing, giving no indication of any set predisposition towards a sentence. As such, the sentence of the trial court is affirmed.

### IV.    CONCLUSION

For the foregoing reasons, we affirm the judgment of the Allen Circuit Court. The trial court did not abuse its discretion in sentencing Siddens to life in prison without the possibility of parole.

All sitting. All concur.

COUNSEL FOR APPELLANT:

Kathleen Kallaher Schmidt
Department of Public Advocacy


COUNSEL FOR APPELLEE:

Daniel J. Cameron
Attorney General of Kentucky

Courtney J. Hightower
Assistant Attorney General