RENDERED:  JULY 12, 2024; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2023-CA-0644-MR

SUSAN CARTER; MIKE NICHOLS;
AND STEVE NICHOLS                                       APPELLANTS


                    APPEAL FROM OLDHAM CIRCUIT COURT
v.                  HONORABLE JERRY CROSBY, II, JUDGE
                    ACTION NO. 22-CI-00578



SEAN PARIS, PUBLIC
ADMINISTRATOR FOR THE
ESTATE OF JOHN WARREN
NICHOLS III; AND RITA RUNAE
HERZOG                                                    APPELLEES


OPINION
AFFIRMING

** ** ** ** **

BEFORE:  THOMPSON, CHIEF JUDGE; ACREE AND L. JONES, JUDGES.

JONES, L., JUDGE:  Susan Carter, Mike Nichols, and Steve Nichols (collectively

"the Siblings") appeal an order of the Oldham Circuit Court dismissing the

underlying action seeking invalidation of their deceased brother's marriage to Rita

Herzog, which occurred just days before his death in December 2021. After careful review of the record, briefs, and applicable law, we affirm.

## I. __Factual and Procedural Background__

John Warren Nichols III died on December 24, 2021. Two days before his death, he remarried his former spouse, Rita Herzog, in a small civil ceremony. In the months leading up to the wedding, John was in the hospital and then a rehabilitation facility due to what appears from the record to be cardiac issues and health concerns related to alcohol use. However, once he left the rehabilitation facility towards the end of November 2021, he stayed for periods of time at Rita's home, or she stayed with him at his home. Rita is a nurse and cared for John's needs, including taking him to various appointments. The couple were divorced in 2014, but according to Rita's deposition testimony, they maintained their relationship, including going on vacations together.

Sometime after John's death and upon learning of his marriage to Rita, the Siblings hired a private investigator ("PI"). According to the PI's investigation, Rita's son, Brandon Herzog, may not have been present at the wedding as a witness, based on statements he made to two of his friends. At that point, John's estate was in probate and, because he died intestate, Sean Paris was appointed as the public administrator by the district court. Upon informing Paris of the PI's investigation, Paris filed the underlying action to declare Rita and

John's marriage invalid due to not having the required number of witnesses present at the ceremony.

The Siblings filed a motion to intervene, in which they argued they have a present, substantial interest in the lawsuit because, if the circuit court determined the marriage was invalid, the Siblings would receive the entirety of John's estate. On the other hand, if the circuit court determined the marriage was valid, the Siblings would receive only half of John's estate minus an additional $30,000.00 for Rita's spousal exemption in personal property. The circuit court granted the Siblings' motion to intervene by an agreed order. Discovery ensued, and after taking the depositions of Brandon Herzog and the Justice of the Peace who performed the ceremony, Paris moved for dismissal of the action. The circuit court granted Paris' motion over the objection of the Siblings. This appeal followed.

## II. Standard of Review

Kentucky Rule of Civil Procedure ("CR") 41.01(2) provides, in relevant part, that an action may be dismissed by an order of the court upon a plaintiff's insistence *and* "upon such terms and conditions as the court deems proper." We review a circuit court's dismissal of an action pursuant to CR 41.01(2) under an abuse of discretion standard. *Sublett v. Hall*, 589 S.W.2d 888, 893 (Ky. 1979). "The test for abuse of discretion is whether the trial judge's

decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999) (citations omitted).

### III. Analysis

On appeal, the Siblings argue the circuit court dismissed the action prematurely, which was prejudicial to them and was essentially an adjudication on the merits. We disagree.

We begin by noting that, although the Siblings filed a motion to intervene pursuant to CR 24,[1] they failed to file a pleading setting out their claims pursuant to CR 24.03. The rule provides, in relevant part, that when filing a motion to intervene, "[t]he motion shall state the grounds therefor and shall be accompanied by a pleading setting forth the claim or defense for which intervention is sought. The same procedure shall be followed when a statute gives a right to intervene." Further, "[a]n application to intervene **must** be accompanied by a pleading setting forth the claim or defense for which the intervention is sought." *Mulligan v. First Nat. Bank & Tr. Co. of Lexington*, 351 S.W.2d 59, 62 (Ky. 1961) (emphasis added). Although Rita and Paris signed an agreed order allowing the Siblings to intervene, without claims of their own specified in a

---

[1] The Siblings cited both CR 24.01 and 24.02 in their motion. CR 24.01 permits intervention of a party as a matter of right and CR 24.02 relates to permissive intervention.

pleading, the Siblings fail to persuade us that they are prejudiced by dismissal of the action. This is because the Siblings do not have standing to bring the underlying claim for declaration of the invalidity of the marriage of John and Rita.

Kentucky Revised Statute ("KRS") 403.120 provides,

(1) The Circuit Court shall enter its decree declaring the invalidity of a marriage entered into under the following circumstances:

    (a) A party lacked capacity to consent to the marriage at the time the marriage was solemnized, either because of mental incapacity or deformity or because of the influence of alcohol, drugs, or other incapacitating substances, or a party was induced to enter into a marriage by force or duress, or by fraud involving the essentials of marriage;

    (b) A party lacks the physical capacity to consummate the marriage by sexual intercourse, and the other party did not at the time the marriage was solemnized know of the incapacity;

    (c) The marriage is prohibited.

(2) A declaration of invalidity under paragraph (a), (b) or (c) of subsection (1) may be sought by any of the following persons and must be commenced within the times specified, but only for the causes set out in paragraph (a) may a declaration of invalidity be sought after the death of either party to the marriage:

    (a) For a reason set forth in paragraphs (a) and (b) of subsection (1), by party or by the legal representative of the party who

lacked capacity to consent, who was the offended party or did not know of the incapacity, no later than 90 days after the petitioner obtained knowledge of the described condition;

(b) For the reason set forth in paragraph (c) of subsection (1), by either party, no later than one (1) year after the petitioner obtained knowledge of the described condition.

Accordingly, pursuant to KRS 403.120(2)(a), only the legal representative of John's estate (*i.e.*, Paris) has standing to bring an action to declare the marriage invalid. We agree with Paris that the Siblings cannot be prejudiced by dismissal of a claim they had no standing to bring.

The decision to continue to pursue the action or to seek dismissal is also at Paris' discretion. KRS 395.195 provides, in relevant part,

[e]xcept as restricted or otherwise provided by the will, or by KRS 395.200, a personal representative, acting reasonably for the benefit of the interested persons, may properly:

. . . .

(19) Prosecute or defend claims, or proceedings in any jurisdiction for the protection of the estate and of the personal representative in the performance of his duties[.]

The depositions of Brandon Herzog and the Justice of the Peace, Gary Fields, satisfied Paris' question regarding whether the wedding had been properly

-6-

witnessed by two people as required by KRS 402.050(2).  Brandon admitted to telling two friends he was not actually present, but stated that this was because, in a nutshell, he did not want anyone to "gossip" about the wedding and because he knew that at least one of the friends he told did not approve of the marriage. Further, Fields testified that he had an extensive conversation with Rita and John prior the ceremony and was convinced John was of sound mind and truly desired to marry Rita.  Particularly telling is one answer Fields gave when testifying to what he discussed with Rita and John prior to the ceremony:

> I asked them, you know, so tell me about – tell me about, you know, why you're getting married, and he said that they'd been married before and that – he mentioned that he'd been in a home and [Rita] had came and taken care of – out of the place, that apparently through his conversation his and his words wasn't – he was not fond of his family, his siblings, and that he had no contact with them, and that – he said that, you know, he was truly in love with her and that he wanted to – he knew that she was going to take care of him and – you know, the rest of his life and that he felt comfortable, you know, being with her and he wanted to take care of her.

Fields also confirmed that Brandon and Rebecca, Rita's sister, attended the ceremony and signed the marriage license.

The circuit court dismissed the action without prejudice so that the Siblings can potentially bring any claims that they have standing to bring on their own.  However, they do not have standing to continue to pursue invalidation of the

marriage of Rita and John; nor have they have cited any persuasive law that would force Paris to continue to pursue the claim at their behest.

## IV. Conclusion

For the foregoing reasons, the judgment of the Oldham Circuit Court is affirmed.

ALL CONCUR.


BRIEFS FOR APPELLANTS:

Michael A. Valenti
Dylan V. Valenti
Louisville, Kentucky

BRIEF FOR APPELLEE SEAN PARIS, PUBLIC ADMINISTRATOR OF THE ESTATE OF JOHN WARREN NICHOLS III:

Sean P. Paris
LaGrange, Kentucky