RENDERED: JANUARY 24, 2025; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-0334-MR

CHASE RICE                                                   APPELLANT

v.

APPEAL FROM GREENUP CIRCUIT COURT
HONORABLE JEFFREY L. PRESTON, JUDGE
ACTION NO. 23-CI-00351

CRYSTAL COLLINS                                         APPELLEE

OPINION
VACATING AND REMANDING

** ** ** ** **

BEFORE: ACREE, CALDWELL, AND LAMBERT, JUDGES.

LAMBERT, JUDGE: Chase Rice (hereinafter "Father") appeals from the Greenup Circuit Court order, entered February 8, 2024, granting Crystal Collins (hereinafter "Mother") sole custody of their minor daughter and restricting him to supervised visitation. After careful review of the briefs, record, and law, we vacate and remand for additional proceedings.

# BACKGROUND FACTS AND PROCEDURAL HISTORY

Father and Mother, who were never married, are the parents of a minor daughter, born in April 2023 (hereinafter "the child"). In August of that year, Father filed the underlying custody action and requested temporary sole custody. Mother counterclaimed for sole custody, alleging that Father had yet to meet the child, despite knowing of both the pregnancy and birth, that he lacked stable housing and employment, and that he had impulse/control issues as a result of a four-wheeler accident in 2015.[1] Mother further requested that visitation, if granted, be supervised. In support she asserted that Father did not know how to provide basic care for the then 4-month-old child and did not know how to care for her specific medical needs resulting from a brachial plexus injury incurred at birth that affected the nerves in the child's arm and required physical therapy.

The court held a hearing to determine temporary custody and visitation, and it entered an order on October 11, 2023. In the order, the court found that Father had not had any contact with the child and that Mother had provided all of her care. The court then concluded that it was in the child's best interest for Mother to have temporary sole custody and for Father to have weekly

---

[1] The answer did not mention the accident, but from later orders and testimony it appears that it is the basis of Mother's claims regarding Father's disposition, and we reference it now for clarity.

supervised visits that would increase in duration after the first visit from three to eight hours.

Father objected to the supervision requirement, arguing it was erroneous as a matter of law since there had been no evidence or finding that he was a danger to the child and, alternatively, he proposed that his stepfather be the supervisor. Mother disputed the necessity for a finding of endangerment, citing Kentucky Revised Statute (KRS) 403.320(3),[2] and argued that the order was not a restriction of Father's visitation. She also opposed Father's proposed supervisor on the basis that he, too, was a stranger to the child. The court denied Father's motion.

On February 6, 2024, the court held a final hearing. In addition to the parties, the child's paternal grandmother and step-grandfather, her maternal aunt, and a friend of Father testified.

Father testified as to his fitness to care for the child. He had a three-bedroom home with adequate space for her where he resided with his fiancée, their 6-month-old daughter, and his fiancée's seventeen-year-old daughter. He was employed as a mechanic/driver for Howard Trucking and did self-employment jobs on the side. Father denied experiencing any significant health problems from

---

[2] KRS 403.320(3) pertains to modification of visitation and is thus inapplicable to this matter. But, as we will discuss in more detail below, KRS 403.320(1) similarly requires a finding of endangerment if less than reasonable visitation is provided.

his four-wheeler accident in 2015, which occurred before he met Mother, and he stated that since the accident he had obtained his commercial driver's license and became certified as a welder and mechanic. He denied any drug use, and he reported that the hair follicle drug test that he submitted to voluntarily and at his own expense was negative for illegal substances. He claimed to have only an occasional drink with dinner.

Father described his relationship with Mother as very volatile with lots of fights and arguments. He was not at the hospital when the child was born, but he stated it was because the facility told him that he would not be allowed entry. He had not exercised his visitation time, but he explained that he did not trust Mother or the child's maternal aunt to not lie about the visits; he claimed without specificity that Mother had lied about him before. Father asserted that he had done all that he could to see the child by filing motions to lift the supervision requirement, to change the supervisor to the child's paternal step-grandfather (who was a retired police officer), and to allow the paternal grandmother to accompany him on his visits. All of his requests were denied.

Father asserted that he was experienced in caring for the daily needs of young children, including the child's half-sister, who is only four months younger, and a previous paramour's son, whom he cared for like a father from his birth to two years of age. Father expressed his desire to be in the child's life, to

understand her health issues, to take her to the doctor, and to raise her. Father requested joint custody and 50/50 timesharing, and he volunteered to do transportation for parenting time.

The child's paternal grandmother, paternal step-grandfather, and Father's friend largely affirmed Father's claims. They all asserted that Father was not impulsive and that he was slow to anger. They all testified to having observed Father care for children and expressed confidence in his abilities. None of the witnesses had met the child.

Mother testified in support of her request for sole custody. She had cared for the child exclusively when not at her full-time employment, during which times the child's maternal grandmother and aunt provided care. Mother took the child to her physical therapy appointments and learned to do her exercises at home. With the exercises, which Mother reported take an hour or two to complete each day, the child required only monthly physical therapy appointments. The child is otherwise healthy and has no specialized care requirements.

Mother ended her relationship with Father because she had not felt safe when he was angry, and she claimed that Father had threatened to take the child from her when she was pregnant and to "put a bullet through [her] dog's head." Mother admitted that Father had learned of the child's birth from someone else before she was able to inform him, but she denied blocking him from visiting

the hospital. She asserted that Father had not contacted her since he was granted visitation except as part of a group text message notifying her and twenty other individuals that his contact information had changed. Mother wanted Father's visits to remain supervised by the child's maternal aunt because the aunt was familiar with, and to, the child and could therefore help him build a relationship with the child. Mother expressed confusion as to why Father would want to share his limited visitation time with his family members, but she had no objection to his family attending the visits. Mother admitted that she had previously used marijuana, but she reported that she tested negative for that substance during the proceedings.

The child's maternal aunt testified that she cared for the child three to four times a week. The aunt learned from Mother how to do the child's physical therapy exercises, which she reported only took 30 to 40 minutes to complete. The aunt expressed her willingness to supervise Father's visits and asserted that she could protect the child. The aunt denied any prior relationship with Father.

Following the conclusion of evidence, the court entered a final order on February 8, 2024. Therein the court stated that utilizing the factors set forth in KRS 403.270 it was in the child's best interest to grant sole custody to Mother. The court cited in support Father's statements that he and Mother could not

cooperate or discuss their child,[3] that he had not exercised his ordered visitation, and that he knew very little about the child. The court reiterated its concerns in having a complete stranger around a ten-month-old child, even if a parent, and found that Father had done nothing to change his status. Finally, the court ordered that Father's visits be supervised for at least three months, at which time the court would consider lifting the requirement.

Father filed a motion to alter, amend, or vacate, challenging the sufficiency of the court's findings to impose supervised visitation and arguing that the court placed too much weight on the parties' present discord in awarding Mother sole custody. Father further requested that the court make additional findings in accordance with KRS 403.270 to support its custody decision. The court denied the motion, and this appeal challenging the grant of sole custody and the supervised visitation restriction timely followed.

**STANDARD OF REVIEW**

The test for an appeal of a child custody determination is whether the findings of the trial court were clearly erroneous or that the court abused its discretion. *Frances v. Frances*, 266 S.W.3d 754, 756 (Ky. 2008) (citing *Eviston v. Eviston*, 507 S.W.2d 153 (Ky. 1974)). A court abuses its discretion if its decision

---

[3] The record, which only contains the video proceedings from the final hearing, does not support this assertion; however, Father has not disputed the court's statement.

is arbitrary, unreasonable, unfair, or unsupported by sound legal principles.

*Goodyear Tire & Rubber Co. v. Thompson*, 11 S.W.3d 575, 581 (Ky. 2000) (citing

*Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999)).

## ANALYSIS

On appeal, Father argues that the court failed to make sufficient

findings to support its grant of sole custody.

KRS 403.270(2)[4] instructs, in relevant part, that the family court:

> shall determine custody in accordance with the best
> interests of the child and equal consideration shall be
> given to each parent[.]  Subject to KRS 403.315, there
> shall be a presumption, rebuttable by a preponderance of
> evidence, that joint custody and equally shared parenting
> time is in the best interest of the child.  If a deviation
> from equal parenting time is warranted, the court shall
> construct a parenting time schedule which maximizes the
> time each parent . . . has with the child and is consistent
> with ensuring the child's welfare.  The court shall
> consider all relevant factors including:
>
> > (a) The wishes of the child's parent or parents . . . as
> > to his or her custody;
> >
> > (b) The wishes of the child as to his or her custodian,
> > with due consideration given to the influence a parent
> > . . . may have over the child's wishes;
> >
> > (c) The interaction and interrelationship of the child
> > with his or her parent or parents, his or her siblings,
> > and any other person who may significantly affect the
> > child's best interests;

---

[4]  For brevity we have omitted references to *de facto* custodians and those factors pertaining solely thereto.

(d) The motivation of the adults participating in the custody proceeding;

(e) The child's adjustment and continuing proximity to his or her home, school, and community;

(f) The mental and physical health of all individuals involved;

(g) A finding by the court that domestic violence and abuse, as defined in KRS 403.720, has been committed by one (1) of the parties against a child of the parties or against another party. The court shall determine the extent to which the domestic violence and abuse has affected the child and the child's relationship to each party, with due consideration given to efforts made by a party toward the completion of any domestic violence treatment, counseling, or program;

. . .

(k) The likelihood a party will allow the child frequent, meaningful, and continuing contact with the other parent[,] except that the court shall not consider this likelihood if there is a finding that the other parent . . . engaged in domestic violence and abuse, as defined in KRS 403.720, against the party or a child and that a continuing relationship with the other parent will endanger the health or safety of either that party or the child.

Father initially contends we must reverse because the court did not make findings as to each statutory factor, but we disagree. Although a court has a general obligation to render sufficient findings to support its conclusions under Kentucky Rules of Civil Procedure (CR) 52.01, KRS 403.270 merely requires that

the court consider the listed best interest factors and not that it render specific findings on each one. *Anderson v. Johnson*, 350 S.W.3d 453, 457-58 (Ky. 2011). Accordingly, the court did not commit reversible error by failing to render findings on each factor.

Turning to the merits, Father further argues that the court abused its discretion when it granted Mother sole custody based only on the parties' inability to communicate and cooperate and the fact that Father had not met the child. Father, citing *Barnett v. White*, 584 S.W.3d 755 (Ky. App. 2019), asserts that the court was required to consider the parties' future ability to coparent and not merely focus on the normal conflict that occurs during custody disputes. Regarding visiting the child, Father renews his claim that the court erred in requiring supervision, and he reiterates the efforts he made to have this unlawful requirement lifted and his distrust of Mother and the maternal aunt.

Because of the emphasis placed on Father's failure to visit with the child, we first will consider whether he is correct that the court erred in restricting him to supervised visitation. "A parent not granted custody of the child and not awarded shared parenting time under the [statutory] presumption . . . is entitled to reasonable visitation rights unless the court finds, after a hearing, that visitation would endanger seriously the child's physical, mental, moral, or emotional health." KRS 403.320(1). What is reasonable visitation "is a matter which must be decided

based upon the circumstances of each parent and the children, rather than any set formula." *Drury v. Drury*, 32 S.W.3d 521, 524 (Ky. App. 2000).

We agree with Father that supervised visitation is not reasonable visitation under these facts. Thus, to be permissible, the court was required to find that unsupervised visitation with Father would seriously endanger the child. The court made sparse findings in both its temporary and final orders that amount to little more than that Father had not met the child, Mother had provided the child's sole care, and the parties did not get along. Even looking to the narrative portion of the court's orders, other than an unexplained observation that Mother feared how Father would react if he became frustrated while caring for the child, there is nothing that even suggests endangerment. Accordingly, we agree that the court erred in requiring Father's visitation be supervised.

Returning to the issue of custody, the court plainly placed great weight on Father's unwillingness to submit to supervised visitation when it granted Mother sole custody. Undoubtedly Father could have visited with the child despite his objections to being supervised, and we share the court's concern that he did not, but we cannot ignore the inextricable fact that the requirement was not supported by law. We have additional concerns that there is no indication that the court considered the statutory presumption for joint custody with equally shared parenting time and, more generally, with the paucity of the court's findings.

-11-

For these reasons, we conclude that the court abused its discretion, and we vacate the court's custody and visitation orders and remand for further proceedings. On remand the court shall reconsider the issues and render judgment, supported by sufficient findings, as it deems appropriate.

## CONCLUSION

For the foregoing reasons, the judgment of the Greenup Circuit Court is VACATED and REMANDED for further proceedings.

ALL CONCUR.


BRIEFS FOR APPELLANT:

R. Stephen McGinnis
Greenup, Kentucky

BRIEF FOR APPELLEE:

Brandon M. Music
Grayson, Kentucky