# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED."
PURSUANT TO THE RULES OF CIVIL PROCEDURE
PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C),
THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE
CITED OR USED AS BINDING PRECEDENT IN ANY OTHER
CASE IN ANY COURT OF THIS STATE; HOWEVER,
UNPUBLISHED KENTUCKY APPELLATE DECISIONS,
RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR
CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED
OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE
BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION
BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED
DECISION IN THE FILED DOCUMENT AND A COPY OF THE
ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE
DOCUMENT TO THE COURT AND ALL PARTIES TO THE
ACTION.

RENDERED: SEPTEMBER 22, 2016
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

## 2015-SC-000451-MR

MATTHEW SMITH          APPELLANT
A/K/A MADDIE SMITH

         ON APPEAL FROM KENTON CIRCUIT COURT
V.          HONORABLE PATRICIA M. SUMME, JUDGE
         NO. 14-CR-00177

COMMONWEALTH OF KENTUCKY          APPELLEE

## MEMORANDUM OPINION OF THE COURT

## **AFFIRMING**

A Kenton County jury found Maddie Smith[1] guilty of one count of murder. The jury recommended a total sentence of forty years' imprisonment. The trial court accepted the jury's recommendation.

Smith now appeals as a matter of right, Kentucky Constitution § 110(2)(b), arguing that the trial court erred by: (1) admitting a drawing that Smith "co-authored" and a suggestive photo of Smith; (2) limiting the testimony of the defense's expert witness and character witnesses; (3) excluding testimony of the victim's alleged prior acts of violence and sexual misconduct; (4) admitting statements Smith made on the morning of the murder; and (5) allowing the Commonwealth to improperly cross-examine Smith. For the reasons set forth below, we affirm.

---

[1] The Appellant, Matthew (Maddie) Smith, is a transgendered individual. Throughout our opinion, we use the feminine pronoun to identify her.

## I. BACKGROUND

It appears that the only witnesses to the events that occurred in the hours immediately preceding Eric Schreiber's death were Smith and Eric Schreiber (Schreiber). As such, we note that the background facts provided only present Smith's rendition of what occurred on the morning of January 1, 2014.

On December 31, 2013, Smith attended a New Year's Eve party at David and Debbie Long's house. In addition to many other guests, Schreiber, the victim, attended the party. Smith knew Schreiber from a July 4th party earlier that year. At that party, Schreiber made unwelcomed advances toward Smith, which made her uncomfortable. In fact, between the two parties, Smith rarely attended events at the Longs' house for fear that Schreiber might be there. However, intent on letting "bygones be bygones," Smith attended the New Year's Eve party at the Longs'.

Throughout the night on December 31, Smith felt more comfortable around Schreiber as he was "pleasant and respectful of her space." However, after David Long went to bed at approximately 10:00 p.m., Smith noticed an immediate change in Schreiber's demeanor. At the stroke of midnight, Schreiber approached Smith, wanting a New Year's kiss. Smith declined, and Schreiber became agitated.

Sometime after 5:30 a.m. on January 1, 2014, Schreiber's unwanted advances became more overt. Smith was in the kitchen washing dishes when she felt Schreiber approach her from behind, place both hands on her hips,

2

and press himself into her lower back. Smith pushed Schreiber away and became very afraid. She grabbed a couple of knives from the counter and went outside. Once outside, she realized that she had left her keys and cell phone inside the house on the couch. Smith tried to reenter the house, but Schreiber blocked her entrance and attempted to kiss her. According to Smith, she then ran into the yard before tripping and falling, while Schreiber ran after her. Schreiber grabbed Smith, pinned her down, and attempted to remove her pants, at which point, she reached for the knives she had taken from the kitchen and flailed against Schreiber.

Smith admitted to Schreiber's wife, Vanessa Schreiber, that she had killed Schreiber. Vanessa called the police, who arrived around 7 a.m., and found Smith inside the Longs' residence, washing blood from her hands and arms. On the back lawn, the police found Schreiber's body, which contained seventy-two stab wounds. Smith had no defensive wounds and admitted to witnesses at the Longs' that she had stabbed Schreiber. We set forth additional facts as necessary below.

## II. ANALYSIS

### A. While the trial court erred in admitting a drawing Smith "co-authored," the error was harmless. The trial court did not err in admitting a social media picture.

#### 1. The drawing.

We review a trial court's evidentiary rulings for abuse of discretion. *Penman v. Commonwealth*, 194 S.W.3d 237, 245 (Ky. 2006). A judge abuses her discretion when her decision is arbitrary, unreasonable, unfair, or

unsupported by sound legal principles. *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999).

Smith complains that the trial court erred in admitting two pieces of evidence introduced by the Commonwealth. The first was a hand-drawn, female stick-figure standing in front of a table and what may or may not be a feather duster on top of the table. Alongside the stick-figure are three hand-written sentences which read: "You better dust good for me or you'll get the whip again!"; "Yes mistress, as you wish . . ."; and "bend over that table like a good sissy!" Although Smith denied that she had drawn the picture and that the handwriting was hers, she admitted to being a "co-author." Defense counsel objected; the trial court overruled that objection.

Smith's defense turned on the fact that she was entitled to use deadly force to prevent Schreiber from sexually assaulting her. *See* Kentucky Revised Statute (KRS) 503.050. The Commonwealth contended during trial that Smith's testimony justifying her use of deadly force was falsified. In support of that contention, the Commonwealth offered the drawing, arguing Smith's testimony that Schreiber "approached her from behind . . . placed his hands on [her] hips and pressed himself into the low of [her] back," was based on and mirrored the drawing and was therefore not credible. After considering the parties' arguments, the trial court ultimately admitted the drawing into evidence.

Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or

4

less probable." Kentucky Rule of Evidence (KRE) 401. "Evidence which is not relevant is not admissible." KRE 402. Additionally, "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of undue prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." KRE 403.

In this matter, the drawing is clearly not relevant. As Smith's counsel argued to the trial court, the only similarity between Smith's testimony and the drawing is that the drawing contains the words bend over and the jury could infer that Smith, while washing dishes, was bent over. The drawing depicts no knives, no stabbing actions, no men, no killings, no sexual assault, and no one bent over. Thus, any comparison between Smith's testimony and the drawing is non-existent, and neither the drawing nor its narrative had any tendency to make Smith's self-defense claim more or less probable.

Although the drawing was not relevant and, thus, its admission constituted error, the error was harmless. The duty of a reviewing court is to consider the trial record as a whole and to ignore errors that are harmless. *Meece v. Commonwealth*, 348 S.W.3d 627, 664 (Ky. 2011) (citing *United States v. Hasting*, 461 U.S. 499, 509 (1983)). "The court at every stage of the proceeding must disregard any error or defect in the proceeding that does not affect the substantial rights of the parties." Kentucky Rule of Criminal Procedure (RCr) 9.24. Our inquiry is not "whether there was enough [evidence] to support the result, apart from the phase affected by the error. It is rather,

5

even so, whether the error itself had substantial influence. If so, or if one is left in grave doubt, the conviction cannot stand." *Winstead v. Commonwealth*, 283 S.W.3d 678, 689 (Ky. 2009) (quoting *Kotteakos v. United States*, 328 U.S. 750, 765 (1946)).

As set forth in greater detail in Section E below, the totality of the evidence was detrimental to Smith. Therefore, the trial court's admission of the drawing, although in error, did not substantially influence Smith's conviction and was harmless.

## 2. The social media photo.

Smith challenges the trial court's admission of a photo she had posted on social media. The photo in question depicts Smith wearing what appears to be a common, non-revealing top, with her arm around a man, while both smile casually at the camera. Applying the relevancy analysis above, we discern no error here.

At trial, Smith testified that she was not comfortable with her gender transition and was hesitant to go certain places for fear of abuse. She argued that, because of her discomfort, she was reasonably more prone to react violently toward male encroachment of her personal space. The Commonwealth offered the photo, in which Smith appeared to be comfortable in the presence of a male, to discredit that testimony.

We first note that the evidence is relevant. The fact that Smith publicly posted this photo of herself online contradicts her contention that due to her discomfort with her transition, she was uncomfortable or fearful around men.

6

Thus, the evidence had some tendency to make her characterization of her state of mind on the morning of the murder more or less probable. *See* KRE 401. We further note that the evidence was not more prejudicial than probative. *See* KRE 403. The photo does not appear to be provocative, as Smith argues. Rather, the photo presents precisely the contention for which the Commonwealth offered it: Smith was comfortable with her transition and with men in her personal space.

Smith cites to *Chumbler v. Commonwealth*, 905 S.W.2d 488 (Ky. 1995), to support her argument that the photo's introduction was unduly prejudicial. In *Chumbler*, the Commonwealth introduced evidence that two of the co-defendants were in a homosexual relationship which, it argued, established a motive for murder. However, the Commonwealth went beyond the co-defendants' relationship by introducing evidence that one of the defendants: engaged in homosexual relationships with young boys; allowed a man to have sex with his wife so the man would also have sex with him; wore women's underwear; and owned sex toys, photographs of which the Commonwealth enlarged and showed to the jury.

This Court in *Chumbler* found that evidence of the relationship between the co-defendants was connected to the crime charged but that evidence of the co-defendants' relationships with third parties and evidence of their sexual habits were unrelated to the crime charged and "had the effect of poisoning the atmosphere of the trial . . . ." *Chumbler*, 905 S.W.2d at 493-94. In contrast, the photograph here lacks any sexual undertones or unduly prejudicial

7

implications; thus, it did not have the effect of poisoning the atmosphere of the trial. For the preceding reasons, we discern no error in the trial court's admission of the photo Smith posted to social media.

## B. The trial court did not err by limiting Dr. Noelker's testimony or by limiting Smith's "character" witnesses.

### 1. The limiting of Dr. Noelker's testimony.

Smith presented Dr. Noelker, who testified by avowal that he did not find Smith to be particularly hypervigilant in the setting in which he examined her, although, he did not "consider hypervigilance to be a relevant issue." The trial court permitted Dr. Noelker to testify that he had diagnosed Smith with gender dysphoria and that, at the time of Schreiber's death, Smith believed she was a woman facing a man. However, given that he had not examined Smith for hypervigilance, the trial court refused to permit Dr. Noelker to testify to hypervigilance in transgendered individuals generally, or the effect that hypervigilance may have had on Smith's state of mind at the time of Schreiber's death.

Smith contends that the trial court erred by improperly limiting Dr. Noelker's testimony. Specifically, Smith complains that the trial court applied a "hyper-technical application" of *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), by not allowing Dr. Noelker to testify about how stigmatization, discrimination, and victimization could cause a person to become hypervigilant.

We review a trial court's evidentiary rulings for abuse of discretion. *Goodyear Tire & Rubber Co. v. Thompson*, 11 S.W.3d 575, 577 (Ky. 2000). The

8

test for abuse of discretion is whether the trial court's decision was arbitrary, unreasonable, unfair or unsupported by sound legal principles. *Id.* at 581. We noted in *Toyota Motor Corp. v. Gregory* that trial courts have a considerable breadth of discretion in performing their gate-keeping function under KRE 702 and that a reviewing court "must give great deference to the trial court's ruling and reverse only in circumstances of clear abuse." 136 S.W.3d 35, 39 (Ky. 2004) (internal quotation omitted).

When faced with a proffer of expert scientific testimony, the trial judge must determine, pursuant to KRE 702, "whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue." *Daubert*, 509 U.S. at 592. "This condition goes primarily to relevance . . . . The consideration has been aptly described . . . as one of 'fit'." *Miller v. Eldridge*, 146 S.W.3d 909, 914 (Ky. 2004) (citing *Daubert*, 509 U.S. at 591) (internal quotations omitted). Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." KRE 401. "Evidence which is not relevant is not admissible." KRE 402.

From our review of the record, it is clear that Dr. Noelker's excluded testimony was not relevant. Regardless of his opinion concerning hypervigilance in transgendered individuals generally, Dr. Noelker did not relate that opinion to Smith specifically. Thus, the testimony did not have any tendency to make the existence of any fact that is of consequence to the

9

determination of Smith's state of mind on the night of Schreiber's death more probable or less probable than it would be without the evidence. *See id.* Because the testimony was not relevant, we need not determine if this portion of Dr. Noelker's testimony was scientific knowledge that would have assisted the trier of fact to understand or determine a fact in issue. *See Daubert*, 509 U.S. at 592. For the reasons preceding, we hold that the court did not abuse its discretion in limiting the testimony of Smith's expert witness.

2. **The limiting of Smith's character witnesses.**

Smith intended to call six "character" witnesses to testify to her character for non-violence. Smith contends that the trial court erred by not permitting her to fully examine each witness during the trial's guilt phase. KRE 403 gives trial courts the discretion to limit the admission of relevant evidence where the "probative value is substantially outweighed by" various harmful effects, including "considerations of undue delay, or needless presentation of cumulative evidence." KRE 403. Thus, we review a trial court's decision regarding the examination of witnesses for an abuse of discretion. *Mullikan v. Commonwealth*, 341 S.W.3d 99, 104 (Ky. 2011).

Defense counsel argued that its six witnesses would present a "splattering of [Smith's] life" to show that she did not have a propensity for violence. These witnesses, among others, included her mother, her sister, a friend, and a local bartender. Although prompted by the court to do so, Smith did not delineate what, if any, unique perspective each witness would provide. The trial court instructed Smith to choose the most probative of her witnesses

10

rather than presenting all six. Ultimately, the court allowed three of Smith's witness to testify: Smith's mother, sister, and a friend. We note that the three witnesses Smith did present testified that Smith had a reputation for being a peaceful and non-violent person.

In reaching its decision, the court found the Commonwealth's witnesses had not testified to Smith's propensity for violence and, given that Smith could not articulate an independent purpose for examining each witness, examination of all six witnesses would needlessly expend the court's time. Thus, the court's decision to limit the number of character witnesses was within the trial court's discretion under KRE 403, and was supported by sound legal principles. *See English*, 993 S.W.2d at 945. Therefore, the court did not abuse its discretion.

## C. The trial court did not err in excluding the victim's prior alleged instances of violence and sexual misconduct.

Although her argument is somewhat confusing, it appears to us from Smith's brief and our review of the record, that Smith complains that the trial court refused to allow her to call two witnesses to testify to Schreiber's propensity for violence and sexual misconduct.

Prior to trial, the Commonwealth filed a motion in limine to prevent Smith from calling Katelyn Starks. Smith contended that Starks would testify that Schreiber had groped her breast ten years before the murder, when she was a teenager. Smith also filed a motion in limine, seeking the court's

11

permission to call Corina Wallace, Schreiber's step-daughter. Smith contended Wallace would testify about Schreiber's abuse and violence toward her mother.

Both witnesses testified by avowal. Starks testified that she had initially said Schreiber groped her breast; however, she later recanted and admitted that he, in fact, had not. Wallace testified that she had never witnessed Schreiber act violently toward her mother.

The trial court ruled that the two witnesses' testimony was inadmissible because the evidence was not relevant. However, we need not address its relevance because neither Starks' nor Wallace's testimony on avowal was consistent with what Smith contended it would be. Starks testified that Schreiber had not touched her – contradicting Smith's contention. Wallace testified that Schreiber had never been violent toward her mother – also contradicting Smith's contention. We fail to see how the trial court could have erred by excluding evidence that did not exist as Smith characterized it.

## D. The trial court's decision to admit statements Smith made about murdering Schreiber was not error.

Smith complains that two statements she made on the night of Schreiber's murder should not have been admitted because they violated KRE 404(b). KRE 404(b) states that "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show conformity therewith." *Billings v. Commonwealth*, 843 S.W.2d 890, 892 (Ky. 1992). However, 404(b) character evidence may be admissible "[i]f offered for some other purpose, such as . . . intent . . . ." KRE 404(b)(1).

12

David Long testified that, on the morning of January 1, 2014, Smith told him that "[she] could get rid of [Schreiber] with like acetone." Vanessa Schreiber testified that, shortly thereafter, Smith alluded to "doing something to Eric and getting rid of him for good and [s]he knew how to do it by using acetone." The Commonwealth offered these statements to negate Smith's self-defense claim and to show that Schreiber's murder was intentional. We note that, at trial, Smith denied making both statements.

Smith argues that, because her statements used the term "acetone" and Schreiber was ultimately stabbed to death, her statements were irrelevant. However, we agree with the Commonwealth that the most pertinent aspect of these statements is not the use of the word "acetone," but use of the phrase "get rid of," which showed Smith intended to kill Schreiber before she was allegedly attacked by him. Therefore, Smith's statements, which the Commonwealth offered to negate Smith's self-defense claim and to show her intent to kill Schreiber, were admissible under KRE 404(b)(1). Furthermore, we find that the statements had a tendency to make Smith's justification for killing Schreiber more or less probable than it would have been without the statements; therefore, the statements were relevant. See KRE 401.

Accordingly, we hold that the trial court did not err by admitting Smith's statements.

## E. The Commonwealth's statements on cross-examination, while improper, did not rise to palpable error.

During its cross-examination, the Commonwealth engaged in the following exchange with Smith:

13

| | |
|---|---|
| **Commonwealth Attorney:** | So, you never said the statement, "I can get rid of him"? |
| **Smith:** | No, I didn't. |
| **Commonwealth Attorney:** | Ok. So this family [the Schreibers] that has accepted you, that has taken you in as one of their own, they're all lying? |
| **Smith:** | That is correct. |
| **Commonwealth Attorney:** | Ok. Not you, the one facing life in prison? |
| **Smith:** | They're lying. |

The Commonwealth concedes that these questions were improper. *See Moss v. Commonwealth,* 949 S.W.2d 579 (Ky. 1997). However, it notes that this issue was not preserved, which Smith concedes. Because the issue was not preserved, we examine it to determine if the error was palpable. RCr 10.26.

An unpreserved error may generally be noticed on appeal if the error is "palpable" and if it "affects the substantial rights of a party." *Id.* Even then, relief is appropriate only "upon a determination that manifest injustice resulted from the error." *Id.* "For an error to rise to the level of palpable, it must be easily perceptible, plain, obvious and readily noticeable." *Doneghy v. Commonwealth,* 410 S.W.3d 95, 106 (Ky. 2013) (internal citation omitted). "When we engage in palpable error review, our focus is on what happened and whether the defect is so manifest, fundamental and unambiguous that it threatens the integrity of the judicial process." *Baumia v. Commonwealth,* 402 S.W.3d 530, 542 (Ky. 2013) (internal citation omitted).

14

Here, the jury was presented with a significant amount of evidence which could lead it to a reasonable finding of guilt. The jury heard that: 1) Smith had discussed killing Schreiber prior to his death; 2) Smith was extremely uncomfortable around Schreiber; 3) Smith gathered kitchen knives after her final dispute with Schreiber; 4) Schreiber died of seventy-two stab wounds to his body; 5) the kitchen knives Smith took were found in the back yard next to Schreiber's body; 6) the police arrived to find Smith washing blood from her hands and arms; and 7) Smith admitted to multiple witnesses at the scene that she stabbed Schreiber. Although the Commonwealth's statements to Smith were improper, given the totality of the evidence against Smith, we discern no substantial possibility that the result would have been any different had the Commonwealth refrained from asking those questions. *See* RCr 10.26. Therefore, although error, the Commonwealth's questioning of Smith was not palpably so.

## III. CONCLUSION

For the foregoing reasons, the judgment of the Kenton Circuit Court in this matter is affirmed.

All sitting. All concur.

COUNSEL FOR APPELLANT:

Julia Karol Pearson
Assistant Public Advocate
Department of Public Advocacy


COUNSEL FOR APPELLEE:

Andy Beshear
Attorney General of Kentucky

Thomas Allen Van De Rostyne
Assistant Attorney General