RENDERED:  MARCH 14, 2025; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-0404-MR

GREGORY DEAN ROE                                                   APPELLANT

v.                APPEAL FROM FAYETTE CIRCUIT COURT
                  HONORABLE THOMAS L. TRAVIS, JUDGE
                        ACTION NO. 18-CR-01472

COMMONWEALTH OF KENTUCKY                                            APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  COMBS, A. JONES, AND McNEILL, JUDGES.

JONES, A., JUDGE:  Acting without the assistance of counsel, the Appellant, Gregory Dean Roe, appeals the Fayette Circuit Court's February 6, 2024 order denying his CR[1] 60.02 motion.  Having reviewed the record and all applicable legal authority, we affirm.

---

[1]  Kentucky Rules of Civil Procedure.

# I. BACKGROUND

Roe was convicted at a jury trial in Fayette Circuit Court of two counts each of rape, sodomy, kidnapping, assault, and terroristic threatening, and a single count of tampering with physical evidence. The convictions arose out of two separate incidents and two different victims, N.B. and S.K. Roe was sentenced to a total of forty-years' imprisonment.

The Kentucky Supreme Court summarized the evidence adduced at Roe's jury trial as follows:

> N.B. testified she had known Roe for twenty years. He was a friend of her boyfriend, Mark Chaffins, and she had previously taken drugs with Roe. On the evening of June 3, 2018, she was walking to a nearby Thornton's convenience store located on 7th Street with her cousin, who was a prostitute. A pickup truck pulled up beside them. Roe was seated in the passenger seat. He asked about her boyfriend, [who] she said was in jail, then asked if she wanted to get high. She declined but he responded by grabbing her arm and pulling her into the truck. He seemed to be holding a pocketknife. The truck drove away, eventually turning into an alley where she and Roe exited. They were arguing but she did not scream for help. After the driver of the truck drove off, they walked up a hill to a parking lot behind a nearby business, Powers Transmission on Winchester Road, where Roe had indicated his girlfriend's inoperable car was parked.
>
> N.B. testified Roe's demeanor suddenly changed. He grabbed her arm and pulled her into the back seat of a gray Nissan Maxima, telling her to "[t]ake off your clothes." He pulled down his pants and made her perform oral sex. When he reached to take mace out of

the glove compartment, his elbow hit the left side of her eye causing her nose to bleed. He performed oral sex on her, penetrated her vagina with his hands and penis, and touched her anus. Roe's actions continued for hours, all the while he continued to brandish his knife. On a few occasions, Roe let N.B. step naked next to the vehicle's back door to urinate. When she tried to break free and call for help, he grabbed her hair and pulled her back into the parked car. She feared being stabbed. Finally, she broke free and ran to the sidewalk in front of the transmission shop. Roe got her clothes and flip flops, ran to where she was standing, spit in her face, and threw the items at her, shouting, "Here bitch. Go tell your daddy. Go tell Mark." She put on her clothes and ran home.

Upon arriving at her residence, N.B. told her father to call 911 because she had been kidnapped and raped. Her father testified another female had helped his daughter to their house. A short while later, at the University of Kentucky Hospital, a sexual assault nurse examiner (SANE) used a sexual assault kit to collect evidence.

Roe's version was markedly different. He testified he and N.B. had engaged in consensual sex intermittently for sixteen years, including ten times for money. On the night of June 3, 2018, he had purchased some cocaine. An unnamed man with a truck then agreed to drive him to Powers Transmission for $5. While the two men were en route to Powers Transmission, Roe encountered N.B. and two other girls at a street corner. N.B. yelled for Roe to stop and asked where he was going. He told her he was working security at Powers Transmission. N.B. asked if she could join him and whether he had anything. He advised he had some drugs and a little money but, as in the past, expected a sexual favor in return. N.B. then got into the truck and accompanied Roe to the transmission shop. After being dropped off, the two walked up a hill to a Nissan automobile parked in the rear lot of the business. They both climbed into the back seat

-3-

of the car where they smoked crack cocaine and she used heroin. N.B. then offered several favors for $80, but he counteroffered with $30 plus some drugs. She agreed and the two engaged in consensual, contractual oral sex. He denied any kind of vaginal or anal sex, nor touching her private areas. After thirty-five minutes, N.B. said she had been there too long, her boyfriend was going to get mad, and she had to go. She then ran off. Roe watched her until she got about two and a half blocks from her house. Fifteen minutes later, Roe said N.B. came back with two black men and demanded $75. When Roe refused, N.B. swung a metal object at him[,] but he was able to duck to avoid the blow. Roe struck N.B. with his palm and produced pepper spray to defend himself. The two men intervened, telling him not to spray them. They told N.B. to leave. As the three departed, N.B. told Roe he was going to jail. He responded by threatening to call the police, which he did. When the police arrived at the lot, Roe did not tell them about the oral sex, because he did not want his fiancée to find out.

S.K. alleged she was raped on September 7, 2018. She was a self-professed drug addict who drank. Her now-deceased roommate, Robin Rose, was an alcoholic. That evening, after using drugs and alcohol, the two women decided to walk to a nearby Thornton's convenience store. The business was located about one mile from Powers Transmission. As they were walking, S.K. testified a man pulled up on a moped and asked if the two women wanted to smoke crack cocaine and get high. S.K. responded affirmatively. The man identified himself as "Greg," and S.K. subsequently picked him out of a police photo line-up, identifying him as Roe. S.K. and her roommate invited Roe to their residence, but he declined. Instead, he insisted the three proceed to a location up the road.

Rose continued to walk toward Thornton's, but S.K. got on the back of the moped, seated behind Roe. She quickly became scared and wanted to get off after he

-4-

ran some traffic signs or lights, but the two ultimately arrived at an alley located behind Powers Transmission. Roe drove the moped up a hill, stopping near some vehicles parked in the rear lot. Roe told her he had left his wallet in one of the cars. He then got into a sports utility vehicle, grabbed what looked like a crack pipe, lit it, and they both smoked its contents. When she joined him, she immediately realized the substance in the pipe was not crack. S.K. was seated beside Roe in the back seat of the vehicle with her feet still touching the ground outside of the vehicle. When she tried to pull away and stand up, Roe pulled her back into the car by her ponytail and began punching her head, shouting, "You crack whores and prostitutes think you're just going to get free drink and drugs off of everybody. Well, it's not going to be me anymore, and I'm not putting up with it. You are going to pay for yours today, whore."

Roe then told S.K. to get naked as he opened a knife and demanded oral sex. He said, "If you bite me, I will cut you." S.K. took her dentures out, and Roe made her perform oral sex several times in addition to putting his fingers inside her vagina and anus. Afterward, Roe opened a beer, poured some for S.K., and started to relax a bit before laying the knife down. S.K. grabbed the knife, jumped out of the back seat, and threw the knife under another vehicle. Roe caught her, beat her, and said, "If you just get dressed right now, I'll give you $100, and you won't have to say anything happened right now." S.K. broke away and ran naked to a nearby Speedway convenience store. She had noticeable bruising on her face and a man called 911. Even so, she refused medical treatment and examination.

Again, Roe's version of the evening's events differed significantly. He testified he had purchased $50 of crack cocaine and a $5 scouring pad for use in smoking crack. When he stopped his moped to pack his cigarettes, two females ran over from a nearby Thornton's convenience store asking for a cigarette. S.K.

-5-

asked, "You looking?" He replied, "Well if it looks something like you, I might be." S.K. then pulled up her long summer dress. She was not wearing any underwear and offered, "You looking for something like this? For $100, me and my girlfriend will both do you." Roe replied he had only $50, was not looking for sex, but might be interested in oral sex. S.K. got on the back of his moped and the two left together, leaving Rose behind.

Roe and S.K. proceeded on the moped to Powers Transmission, where he took out his knife, cut the scouring pad, and tossed his knife under a vehicle. Roe then climbed into the driver's side back seat of a Nissan belonging to his girlfriend. S.K. walked to the other side, sat down beside him, and they smoked some crack. At some point, Roe pulled down his pants and handed S.K. $40. S.K. took out her dentures and engaged in oral sex for approximately forty seconds. At that point, she pulled out a needle from her breasts and injected herself with what she said was crystal meth. She then took another hit from the crack pipe before yelling, "Ahhhh, I've got bugs on me. I've got bugs on me." She thereupon jumped out of the parked vehicle, fell, ran down the hill, and turned right before he lost sight of her. He had no further contact with her that night. He left five to ten minutes later, throwing away S.K.'s dentures because he did not want his fiancé[e] to find them in her car.

Three months later, S.K. reported the rape, and police found the knife under a vehicle still parked in the transmission shop's back lot. Roe was arrested on charges from both incidents.

Prior to trial, the Commonwealth's motion to introduce evidence of Roe's alleged attempted sexual attack on a third victim, A.N., was granted. At trial, Officer Alex Holland testified he was dispatched to a Speedway on Winchester Road on May 27, 2018, eight days before N.B.'s rape. A.N. reported she was assaulted

-6-

behind Powers Transmission but escaped to seek help at the Speedway. After Officer Holland arrived, he asked to be taken to the location of the assault. A.N. took him to a gray Nissan Maxima parked behind Powers Transmission. It was the same vehicle N.B. described when she reported her assault the next week. Roe was on the scene when Officer Holland and A.N. arrived. In his own defense, Roe told Officer Holland that he had previously confronted A.N. and two black males and that one of the men had stuck a gun in Roe's face. Officer Holland testified Roe told a similar story about two black males the next week during the investigation of the incident with N.B.

When Roe presented trial testimony inconsistent with his prior statements, the Commonwealth called Ben Coolbear, the foreman of the grand jury, for the purpose of impeaching Roe with his own grand jury testimony. Coolbear indicated the grand jury had heard testimony from Roe about the incidents involving both N.B. and S.K. The Commonwealth then played an audio recording of Roe's grand jury testimony, which Coolbear testified was a fair and accurate representation of his testimony. Coolbear stated that after hearing other testimony, the grand jury indicted Roe relative to both incidents.

*Roe v. Commonwealth*, No. 2020-SC-0150-MR, 2022 WL 4397746, at *1-3 (Ky. Sep. 22, 2022).

Following his convictions, Roe appealed to the Kentucky Supreme Court as a matter of right alleging five errors: (1) the trial court erred by failing to enter a directed verdict on the kidnapping charges in accordance with the kidnapping exemption statute, KRS[2] 509.050; (2) the trial court erred in failing to

_____

[2] Kentucky Revised Statutes.

enter a directed verdict on the rape and sodomy charges; (3) the trial court erred in allowing the Commonwealth to present KRE[3] 404(b) evidence; (4) the trial court erred in allowing the grand jury foreman to testify; and (5) improper comments and questioning by the Commonwealth were substantially prejudicial and denied him due process. The Court rejected all of Roe's arguments and unanimously affirmed his convictions in an opinion rendered on September 22, 2022.

On October 3, 2023, Roe, *pro se*, filed a CR 60.02(e) & (f) motion. Roe's motion alleged palpable error occurred because his jury instructions were improper and not tailored to reflect the evidence in the case. The Commonwealth objected by written response on December 13, 2023. On February 6, 2024, the trial court denied Roe's motion. This appeal followed.[4]

## II. STANDARD OF REVIEW

The standard of review concerning a trial court's denial of a CR 60.02 motion is whether the trial court abused its discretion. *Brown v. Commonwealth*, 932 S.W.2d 359, 362 (Ky. 1996); *White v. Commonwealth*, 32 S.W.3d 83, 86 (Ky. App. 2000). "The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles."

---

[3] Kentucky Rules of Evidence.

[4] On November 20, 2024, during the pendency of this appeal, and acting with the assistance of counsel, Roe filed a motion to vacate, set aside, or correct his sentence pursuant to Kentucky Rule of Criminal Procedure (RCr) 11.42. That motion remains pending before the trial court.

*Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999). Therefore, the trial court's decision will be affirmed unless there is a showing of some "flagrant miscarriage of justice." *Gross v. Commonwealth*, 648 S.W.2d 853, 858 (Ky. 1983).

### III. ANALYSIS

Kentucky law has an established structure to its post-conviction relief process. In *Gross v. Commonwealth*, 648 S.W.2d 853 (Ky. 1983), the Kentucky Supreme Court explained:

> The structure provided in Kentucky for attacking the final judgment of a trial court in a criminal case is not haphazard and overlapping, but is organized and complete. That structure is set out in the rules related to direct appeals, in RCr 11.42, and thereafter in CR 60.02. CR 60.02 . . . is for relief that is not available by direct appeal and not available under RCr 11.42. The movant must demonstrate why he is entitled to this special, extraordinary relief. Before the movant is entitled to an evidentiary hearing, he must affirmatively allege facts which, if true, justify vacating the judgment and further allege special circumstances that justify CR 60.02 relief.

> CR 60.02 was enacted as a substitute for the common law writ of coram nobis. The purpose of such a writ was to bring before the court that pronounced judgment errors in matter of fact which (1) had not been put into issue or passed on, (2) were unknown and could not have been known to the party by the exercise of reasonable diligence and in time to have been otherwise presented to the court, or (3) which the party was prevented from so presenting by duress, fear, or other sufficient cause. *Black's Law Dictionary*, *Fifth Edition*, 487, 1444.

In *Harris v. Commonwealth*, Ky., 296 S.W.2d 700 (1956), this court held that 60.02 does not extend the scope of the remedy of coram nobis nor add additional grounds of relief. We held that coram nobis "is an extraordinary and residual remedy to correct or vacate a judgment upon facts or grounds, not appearing on the face of the record and not available by appeal or otherwise, which were not discovered until after rendition of judgment without fault of the party seeking relief."

*Id.* at 856.

CR 60.02 is not intended merely as an additional opportunity to relitigate the same issues which could reasonably have been presented by direct appeal or by RCr 11.42 proceedings. Yet, this is precisely how Roe is attempting to use it. The jury instructions were not hidden from either Roe or his counsel. The arguments he presented to the trial court in his CR 60.02 motion were at all times apparent from the face of the record. The fact that Roe and his appellate counsel did not pursue them on direct appeal is not sufficient to justify allowing him a second bite at the apple by way of CR 60.02. The trial court did not err when it found Roe's CR 60.02 motion was procedurally barred.

## IV. CONCLUSION

For the reasons set forth above, we affirm the Fayette Circuit Court's February 6, 2024 order denying Roe's CR 60.02 motion for relief from judgment.

-10-

ALL CONCUR.

BRIEFS FOR APPELLANT:

Gregory D. Roe, *pro se*
La Grange, Kentucky

BRIEF FOR APPELLEE:

Russell Coleman
Attorney General of Kentucky

Matthew R. Krygiel
Assistant Attorney General
Frankfort, Kentucky