RENDERED:  NOVEMBER 21, 2025; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-0782-MR

VERNON W. WRIGHT                                                 APPELLANT

|        | APPEAL FROM PIKE CIRCUIT COURT |
|--------|--------------------------------|
| v.     | HONORABLE KENT VARNEY, JUDGE    |
|        | CASE NO. 23-CI-00598           |

KELLIE S. WRIGHT AND
THE COMMONWEALTH OF
KENTUCKY                                                          APPELLEES

OPINION
REVERSING, VACATING,
AND REMANDING

** ** ** ** **

BEFORE:  CETRULO, KAREM, AND MOYNAHAN, JUDGES.

KAREM, JUDGE:  Vernon Wright ("Vernon") appeals from a Pike Circuit Court order denying his Kentucky Rules of Civil Procedure ("CR") 60.02 motion to set aside two orders holding him in contempt of court for failure to pay child support.

Upon careful review, we reverse the order denying the CR 60.02 motion; vacate the orders finding Vernon in contempt; and remand for further proceedings.

## FACTUAL AND PROCEDURAL BACKGROUND

Vernon and Kellie Wright ("Kellie") were divorced in Clermont County, Ohio, in 1999. Kellie was designated the residential parent and legal custodian of their two children, and Wright was ordered to pay child support. At some point thereafter, Kellie and the children moved to Alabama, and Vernon moved to Kentucky. The child support was terminated for one child in 2009 and the other in 2013. Vernon failed to pay child support and accrued an arrearage amount of $50,815.79.

On April 1, 2023, the Kentucky Interstate Central Registry received a request from the Clermont County Child Support Office to register and enforce the arrearage amount. The Pike County Attorney filed an action under the Uniform Interstate Family Support Act ("UIFSA"), Kentucky Revised Statutes ("KRS") 407.5101 *et seq*., seeking an arrearage judgment, income withholding, a monthly payment amount, and an order to make the Department of Income Support the payee. The circuit court entered an order setting the matter for a hearing on October 3, 2024. Vernon failed to appear. The circuit court entered an order and judgment finding Vernon owed a child support arrearage amount of $50,815.79. Specifically, the court ordered; effective October 1, 2023, Vernon was to pay $100

-2-

per month toward the arrearage; his income could be withheld for support payments in arrears by thirty days; and, that the Commonwealth's motion to hold Vernon in contempt of court for failure to pay child support was granted. The circuit court entered a separate order directing Vernon to appear on January 23, 2024, for a hearing to show cause why he should not be held in contempt of court.

Vernon appeared without counsel on January 23, 2024. He told the court he had just moved back from Cincinnati, he was in sober living, and he had called that morning about going back to work. Vernon believed his wife had "dropped" the child support in Ohio. The court told him he would have to return to Ohio if he wanted to contest the child support, and that all the court could do was enforce the back payments. Vernon told the court he did not want to contest anything and wanted to start making payments right away. The court told him that "they're asking us to collect it at $100 per month." Vernon replied, "That's fine." The court asked him if he could pay $100 per month, and he said "yes."

The court entered a written order on January 29, 2024, finding that Vernon was homeless and living in the Shelby Valley Veterans' Home, and had no income at that time. The order stated that Vernon was held to be in contempt of court for failure to pay child support as previously ordered; that he could purge himself of contempt by paying the sum of $100 per month toward the arrearage; that he was to make January and February's payments prior to the review hearing

-3-

scheduled for March 5, 2024, and that should he fail to purge himself of contempt, an immediate warrant for his arrest would be issued.

Vernon did not make the payments, and he did not appear at the review hearing. On March 5, 2024, the trial court entered an order finding that Vernon had failed to purge himself of contempt pursuant to prior orders of the court, granting judgment in the amount of $50,815.79 (not including Ohio's fees and interest), reissuing a bench warrant, and setting a full cash bond of $10,000.

Vernon was arrested for public intoxication on March 22, 2024. The bench warrant for his arrest was served at that time. A public advocate was appointed to represent him.

On March 27, 2024, Vernon's counsel filed a CR 60.02 motion to set aside the previous orders of contempt entered on January 29, 2024, and March 5, 2024. He argued that the trial court had entered the orders without making findings of fact that Vernon was able to pay towards the arrearage and, indeed, the only finding it did make in this regard was that Vernon was homeless, staying in the veterans' home, and had no income. He further argued that the trial court should have provided Vernon the opportunity to complete an affidavit of indigency and that Vernon had the right to appointed counsel before the finding of contempt was made.

Vernon was released from the Pike County Detention Center on April 23, 2024.

The trial court conducted a hearing on the CR 60.02 motion and stated that Vernon did not have a right to appointed counsel unless he requested it. The trial court denied the CR 60.02 motion to set aside the contempt finding in a docket notation on April 25, 2024. Vernon filed a motion for the court to issue a judgment clarifying the grounds of the April 25, 2024, order and for findings of fact and conclusions of law.

On May 21, 2024, the trial court entered an order finding Vernon was still in contempt but had started working at Wendy's. He had made only one payment of $20 towards his arrearage. The court ordered an Income Withholding Order to be sent to Wendy's in the amount of $100 per month. The order specified that he would be immediately arrested if he failed to purge himself of contempt by failing to make payments or failing to appear for future hearings. On the same day, Vernon filed a notice of appeal from the April 25, 2024, denial of his CR 60.02 motion to set aside the orders of contempt.

## STANDARD OF REVIEW

CR 60.02 has been described as "a safety valve, error correcting device for trial courts." *Kurtsinger v. Board of Trustees of Kentucky Retirement Systems*, 90 S.W.3d 454, 456 (Ky. 2002). "The rule is designed to allow trial

-5-

courts a measure of flexibility to achieve just results and thereby provides the trial court with extensive power to correct a judgment." *Id*. (citation omitted). "Accordingly, CR 60.02 addresses itself to the broad discretion of the trial court and for that reason, decisions rendered thereon are not disturbed unless the trial judge abused his/her discretion." *Id*. The test for abuse of discretion is whether the trial court's decision was "arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky.1999) (citations omitted).

## ANALYSIS

Vernon argues, in reliance on *Lewis v. Lewis*, 875 S.W.2d 862 (Ky. 1993), that he had a right to appointed counsel before he was held in contempt of court. In *Lewis*, the Kentucky Supreme Court held that "the statutes of the Commonwealth require that an indigent person has a right to appointed counsel in civil contempt proceedings prior to the execution of an order of incarceration." *Id.* at 864. The specific statutes are found in KRS Chapter 31:

> A "serious crime" is defined by KRS 31.100(4)(c) as "[a]ny legal action which could result in the detainment of a defendant." Detain "means to have in custody or otherwise deprive of freedom of action." KRS 31.100. "A needy person who is being detained by a law enforcement officer . . . or who is under formal charge of having committed, or is being detained under a conviction of, a serious crime is entitled" to appointed counsel. KRS 31.110.

-6-

*Id.* at 864.

The *Lewis* Court recognized "that trial judges are human and that child support questions are vexing and difficult[,]" and cautioned that "[n]othing in this opinion should be construed as limiting the use of imprisonment as a legitimate tool for the enforcement of child support orders." *Id*. It set forth the following process to be followed by the trial court to ensure compliance with the statutes:

> The trial court must hold a hearing and allow the contemnor to explain through counsel, or *pro se*, why he or she should not be incarcerated for civil contempt of court. If the contemnor is not represented by counsel at such a hearing, then the trial court should make a specific finding of fact concerning the person's indigency. If the defendant is found to be indigent, then prior to any incarceration, counsel should be appointed and the defendant should be given an opportunity to show cause why the order of incarceration should not be executed.
>
> Should defendants be found to have present ability to pay; that is, they have the funds available to purge themselves of contempt and thus the key to their own release, the trial judge could find the defendants in civil contempt and the order should identify it as such. If the defendant has the present ability to pay, he or she may not be indigent and therefore not entitled to appointed counsel. If found to be indigent, the trial court should then appoint counsel pursuant to KRS 31.110 to represent the indigent person.

*Id*. at 865.

At the show cause hearing on January 23, 2024, Vernon informed the trial court that he was in sober living, that he was calling about getting back to work, and that he would be able to pay $100 per month. The trial court's order found that Vernon was residing in a veterans' home and had no income. Under *Lewis*, the trial court was required to make a specific finding of fact regarding whether Vernon was indigent and, if so, to appoint counsel to represent him before any order of incarceration could be entered.

Vernon further argues that the trial court was required to make findings of fact regarding his ability to pay the arrearage. "[A] contemnor's ability to satisfy a judgment, and thereby purge a contempt amount, . . . is a finding of fact to be made by the trial court." *Sidebottom v. Watershed Equine, LLC*, 564 S.W.3d 331, 333 (Ky. App. 2018) (citation omitted). "The contemnor's ability to pay must be properly found and clearly set forth in a finding of fact." *Id*. at 334 (internal quotation marks and citation omitted). At the show cause hearing on January 23, 2024, the trial court questioned Vernon, who was not represented by counsel, about his ability to pay the purge amount. It did not make specific findings on this issue. This omission provides further grounds to vacate the orders finding Vernon in contempt and to remand the matter for a new hearing in accordance with this Opinion.

## **CONCLUSION**

For the foregoing reasons, the order denying Vernon's CR 60.02 motion is reversed.  The prior orders of contempt are vacated, and the case is remanded for a hearing to determine whether Vernon is indigent and for the appointment of counsel if necessary.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Adam Meyer
Assistant Public Advocate
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Paul Howard, Jr.
Pike County Attorney
Pikeville, Kentucky